(No. 81176.—

SANDRA S. KUNKEL *et al.*, Appellees, v. LAUREL A. WALTON, D.O., *et al.*, Appellants.

*Opinion filed November 20, 1997.—Rehearing denied February 2, 1998.*

520

HEIPLE, J., took no part.

Gregory Q. Hill and Deanne F. Jones, of Kehart, Shafter, Hughes & Webber, P.C., of Decatur, and Robert Marc Chemers and Daniel G. Wills, of Pretzel & Stouffer, Chrtd., of Chicago, for appellants.

Robert M. Owen, of Decatur, for appellees.

Barbara A. Preiner, Solicitor General, of Springfield (Deborah L. Ahlstrand, A. Benjamin Goldgar and Laura M. Wunder, Assistant Attorneys General, of Chicago, of counsel), for intervenor James E. Ryan, Attorney General.

Tyrone C. Fahner, John E. Muench and Robert M. Dow, Jr., of Mayer, Brown & Platt, of Chicago, for *amicus curiae* Illinois Civil Justice League.

Thaddeus J. Nodzenski and Mark D. Deaton, of Na-

perville, for *amicus curiae* Illinois Hospital & Healthsystems Association.

Mark S. Killion, of Stratton & Nardulli, of Springfield, for *amicus curiae* Illinois Manufacturers' Association.

Saul J. Morse and Robert J. Kane, of Springfield, and James R. Thompson, Calvin Sawyier, Bruce R. Braun and Gregory K. Smith, of Winston & Strawn, of Chicago, for *amicus curiae* Illinois State Medical Society.

Robert H. Abney, of Chicago, for *amicus curiae* Metropolitan Chicago Healthcare Council.

Michael Resis and Glen E. Amundsen, of Querrey & Harrow, Ltd., and James P. DeNardo and Kristin L. Dvorsky, of McKenna, Storer, Rowe, White & Farrug, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE NICKELS delivered the opinion of the court:

In this appeal, we consider the constitutionality of section 2—1003(a) of the Code of Civil Procedure (735 ILCS 5/2—1003(a) (West 1994)) as amended by the Civil Justice Reform Amendments of 1995 (Pub. Act 89—7, eff. March 9, 1995). As described in more detail later, section 2—1003(a) provides that any party who alleges a claim for bodily injury or disease shall be deemed to waive any privilege of confidentiality with his or her health care providers. Section 2—1003(a) further provides that upon request of any other party, the party claiming injury shall sign and deliver separate consent forms authorizing each of his or her health care providers to disclose medical records to the requesting party

and to engage in *ex parte* conferences with the requesting party's attorneys.

Plaintiffs, Sandra and Ronald Kunkel, brought this action in the circuit court of Macon County against defendants, Laurel A. Walton, D.O., Herbert W. Thompson, M.D., and Mary E. Herald, M.D., seeking recovery for medical malpractice in the course of Dr. Walton's treatment of Mrs. Kunkel. Mr. Kunkel sought recovery from defendants for loss of consortium and under the Rights of Married Persons Act (750 ILCS 65/15 (West 1994)). Defendants served plaintiffs with a request for consents authorizing the release of medical information pursuant to section 2—1003(a). Plaintiffs thereafter filed a motion for a protective order in which they challenged the constitutionality of section 2—1003(a). Following a hearing, the trial court entered an order declaring section 2—1003(a) unconstitutional. The trial court concluded that section 2—1003(a) violated the separation of powers doctrine (Ill. Const. 1970, art. II, §1) and the prohibition of unreasonable invasions of privacy (Ill. Const. 1970, art. I, §6). The trial court also ruled that the statute was unconstitutional because "the required Authorization of Release of Medical Information is overly coercive and prevents a Plaintiff from making a free and consensual decision." Defendants appealed directly to this court from the trial court's order. 134 Ill. 2d R. 302(a). We allowed a motion by Illinois Attorney General James E. Ryan to intervene in this appeal, and have allowed various organizations to appear as *amici curiae*.[1]

---

[1]*Amicus* briefs asserting that section 2—1003(a) is constitutional, and advocating reversal of the trial court's order, have been filed by the Illinois Hospital & Healthsystems Association, the Metropolitan Chicago Healthcare Council, the Illinois Civil Justice League, the Illinois Manufacturers' Association, the Il-

## ANALYSIS

### I

Section 2—1003(a) provides, in pertinent part:

"Any party who by pleading alleges any claim for bodily injury or disease, including mental health injury or disease, shall be deemed to waive any privilege between the injured person and each health care provider who has furnished care at any time to the injured person. *** Any party alleging any such claim *** shall, upon written request of any other party who has appeared in the action, sign and deliver within 28 days to the requesting party a separate Consent authorizing each person or entity who has provided health care at any time to the allegedly injured person to:

> (1) furnish the requesting party or the party's attorney a complete copy of the chart or record of health care in the possession of the provider ***;

> (2) permit the requesting party or the party's attorney to inspect the original chart or record of health care [at the provider's regular business location during regular business hours] ***;

> (3) accept and consider charts and other records of health care by others, radiographic films, and documents, including reports, deposition transcripts, and letters, furnished to the health care provider by the requesting party or the party's attorney, before giving testimony in any deposition or trial or other hearing;

> (4) confer with the requesting party's attorney before giving testimony in any deposition or trial or other hearing and engage in discussion with the attorney on the subjects of the health care provider's observations related to the allegedly injured party's health, including the following: the patient history ***; the health care provider's opinions related to the patient's state of health, prognosis, etiology, or cause of the patient's state

---

linois State Medical Society, and the Illinois Association of Defense Trial Counsel.

of health at any time, and the nature and quality of care by other health care providers, including whether any standard of care was or was not breached; and the testimony the health care provider would give in response to any point of interrogation, and the education, experience, and qualifications of the health care provider.

* * *

A request for a Consent under this subsection (a) does not preclude such subsequent requests as may reasonably be made seeking to expand the scope of an earlier Consent which was limited to less than all the authority permitted by subdivisions (1) through (4) of this subsection (a) or seeking additional Consents for other health care providers.

The provisions of this subsection (a) do not restrict the right of any party to discovery pursuant to rule." 735 ILCS 5/2—1003(a) (West 1996).

Under section 2—1003(a) documents and information obtained pursuant to a consent are confidential and may only be disclosed to the parties, their attorneys, their insurers' representatives and certain witnesses and consultants. 735 ILCS 5/2—1003(a) (West 1996). Section 2—1003(a) also specifically provides that if a party claiming injury refuses to comply with a request for a consent, the trial court, on motion, shall issue an order authorizing disclosure to the extent set forth in the statute or dismissing the case. 735 ILCS 5/2—1003(a) (West 1996).

The requirement that personal injury plaintiffs authorize in writing the disclosure of medical information, and further authorize their physicians and other health care providers to engage in informal communications with the opposing party's attorneys, represents the General Assembly's response to the decision of the appellate court in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986). In *Petrillo*, the court upheld an order barring a defense attorney in a product liability

case from engaging in *ex parte* conferences[2] with the plaintiff's treating physicians. The *Petrillo* court based its holding on the fiduciary relationship existing between physician and patient and the physician's ethical obligation as a member of the medical profession to safeguard patient confidences. The court concluded that a patient who files suit implicitly consents to the release of medical information through the methods of discovery authorized by the supreme court rules, but "does not, by simply filing suit, consent to his physician discussing that patient's medical confidences with third parties outside court-authorized discovery methods, nor does he consent to his physician discussing the patient's confidences in an *ex parte* conference with the patient's legal adversary." *Petrillo*, 148 Ill. App. 3d at 591. By its terms, section 2—1003(a) compels the patient to provide express written authorization for disclosure beyond the scope of the implied consent described in *Petrillo*.

With this general background in mind, we turn to the constitutional issues. We first address the question of whether section 2—1003 represents an impermissible encroachment on the authority of the judicial branch. The doctrine of separation of powers is encompassed in section 1 of article II of the Illinois Constitution of 1970, which provides that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Section 1 of article VI of the Illinois Constitution of 1970 provides that "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Section 16 of

---

[2]The *Petrillo* court used the term "*ex parte*" to describe "any discussion that defense counsel has with a plaintiff's treating physician which is not pursuant to the authorized methods of discovery outlined by Supreme Court Rule 201." *Petrillo*, 148 Ill. App. 3d at 584 n.1. The term will be used in the same fashion in this opinion.

article VI provides, in pertinent part, "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." The judicial power has been described as including the adjudication and application of law and the procedural administration of the courts. *In re S.G.*, 175 Ill. 2d 471, 487 (1997). It is clear that this court possesses rulemaking authority to regulate the trial of cases. *Strukoff v. Strukoff*, 76 Ill. 2d 53, 58 (1979).

The separation of powers provision does not seek to achieve a complete divorce between the branches of government; the purpose of the provision is to prevent the whole power of two or more branches from residing in the same hands. *S.G.*, 175 Ill. 2d at 486-87. There are areas in which separate spheres of governmental authority overlap and certain functions are thereby shared. *S.G.*, 175 Ill. 2d at 487. Where matters of judicial procedure are at issue, the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration. *People v. Williams*, 124 Ill. 2d 300, 306-07 (1988). Ultimately, however, this court retains primary constitutional authority over court procedure. Consequently, the separation of powers principle is violated when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority. *People v. Walker*, 119 Ill. 2d 465, 475-76 (1988); *People v. Bainter*, 126 Ill. 2d 292, 303 (1989); *Williams*, 124 Ill. 2d at 306-07; *S.G.*, 175 Ill. 2d at 487. With regard to separation of powers violations resulting from conflicts between statutory provisions and court rules, this court has indicated that even where

a statute, standing alone, does not violate the separation of powers clause, "the legislature is without authority to interfere with 'a product of this court's supervisory and administrative responsibility.' " *People v. Joseph*, 113 Ill. 2d 36, 45 (1986), quoting *People v. Jackson*, 69 Ill. 2d 252, 259 (1977). The principle that court rules will supersede inconsistent statutory provisions is connected to " 'the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department.' " *People v. Cox*, 82 Ill. 2d 268, 275 (1980), quoting *Agran v. Checker Taxi Co.*, 412 Ill. 145, 149 (1952).

Legislative enactments enjoy a strong presumption of constitutionality, and the burden rests upon the challenger to demonstrate the invalidity of a particular statute. *S.G.*, 175 Ill. 2d at 486. If legislation conflicts with a rule of the judiciary, courts will seek to reconcile the legislation with the judicial rule. *Williams*, 124 Ill. 2d at 306. However, where this is not reasonably possible, this court has not hesitated to strike down legislative enactments governing judicial procedure. For instance, in *People v. Joseph*, 113 Ill. 2d 36 (1986), this court invalidated a statutory provision requiring that post-conviction proceedings be conducted by a judge who was not involved in the original trial proceedings. This court concluded that the provision was inconsistent with Supreme Court Rule 21(b), which provided the chief judge of each circuit may enter general orders providing for the assignment of judges. *People v. Cox*, 82 Ill. 2d 268 (1980), dealt with the validity of a statutory provision which created a rebuttable presumption that sentences imposed for criminal convictions were proper, but authorized reviewing courts to modify the sentence and enter any sentence the trial judge could have entered. This court struck down this statute on the basis

that it was in direct conflict with cases that had interpreted an applicable supreme court rule as providing for review of sentencing decisions and reduction of sentences under an abuse of discretion standard. In *People v. Jackson*, 69 Ill. 2d 252 (1977), this court invalidated a 1975 amendment to the Code of Criminal Procedure of 1963 that gave each opposing counsel the right to conduct his own *voir dire* of prospective jurors. This provision was held to be in conflict with Supreme Court Rule 234, which directed the court to conduct *voir dire* with questions deemed appropriate and such additional questions or direct inquiry by the parties as the court deems proper.

The statutory provision in the case at bar represents a similar encroachment on this court's paramount authority to regulate judicial procedure by court rule. Supreme Court Rule 201 provides, in pertinent part:

"Rule 201. General Discovery Provisions

(a) Discovery Methods. Information is obtainable *as provided in these rules* through any of the following discovery methods: depositions upon oral examination or written questions, written interrogatories to parties, discovery of documents, objects or tangible things, inspection of real estate, requests to admit and physical and mental examination of persons. Duplication of discovery methods to obtain the same information should be avoided.

(b) Scope of Discovery.

(1) *Full Disclosure Required.* Except as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party ***.
***

(2) *Privilege and Work Product.* All matters that are privileged against disclosure on the trial *** are privileged against disclosure through any discovery procedure. ***

\*\*\*

(c) Prevention of Abuse.

(1) *Protective Orders.* The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression.

(2) *Supervision of Discovery.* Upon the motion of any party or witness, on notice to all parties, or on its own initiative without notice, the court may supervise all or any part of any discovery procedure." (Emphasis added.) 166 Ill. 2d R. 201.

Rule 201 and related rules governing specific discovery methods form a comprehensive scheme for fair and efficient discovery with judicial oversight to protect litigants from harassment. The consent procedure under section 2—1003(a) is inconsistent with this scheme and substantially undermines it. First of all, the consent procedure set forth in section 2—1003(a) is simply unauthorized by Rule 201(a), which specifies that information is obtainable "as provided in these rules" and enumerates the authorized methods of discovery. More importantly, section 2—1003(a) circumvents the relevance requirement set forth in Rule 201(b)(1). To be certain, the scope of information considered "relevant" under this court's discovery rules is expansive, including not only evidence that would itself be admissible at trial, but also information leading to the discovery of admissible evidence. See *Monier v. Chamberlain,* 31 Ill. 2d 400, 403 (1964); 166 Ill. 2d R. 201(b), Committee Comments. The concept of relevance facilitates trial preparation while safeguarding against improper and abusive discovery. In addition, the relevance requirement has a constitutional dimension which is discussed later.

Unlike our rules, however, section 2—1003(a) places no limitation whatsoever on the scope of medical infor-

mation subject to disclosure. To the contrary, the mandated disclosure is described in the broadest possible terms. The plaintiff must consent to the disclosure of medical information by "*each person or entity* who has provided health care *at any time*," and must authorize them to furnish "a complete copy of the chart or record of health care in the possession of the provider." (Emphasis added.) 735 ILCS 5/2—1003(a) (West 1996). The plaintiff must also authorize *ex parte* communications with his or her health care providers concerning medical history and the health care provider's observations related to "the patient's state of health, prognosis, etiology, or cause of the patient's state of health *at any time*." (Emphasis added.) 735 ILCS 5/2—1003(a)(4) (West 1996). There is no language in this provision in any manner restricting the consent requirement to the injury which is the subject of the lawsuit or to related medical conditions. Under section 2—1003(a), as a condition of proceeding with his or her lawsuit, an injured party must consent to the disclosure of medical information wholly unrelated to the injury for which recovery is sought. Indeed, under the unqualified language of section 2—1003(a), the injured party may have to consent to the release of complete medical records held by health care providers who have never treated the injured party for any condition even remotely related to the subject matter of the lawsuit. The consent procedure set forth in section 2—1003(a) goes well beyond the legitimate objectives of discovery as reflected in this court's rules. Instead, section 2—1003(a) seems to be designed to discourage tort victims from pursuing valid claims by subjecting them to the threat of harassment and embarrassment through unreasonable and oppressive disclosure requirements.

Defendants and the Attorney General have attempted to justify section 2—1003(a) on the basis that

the physician-patient privilege did not exist at common law (see *Parkson v. Central DuPage Hospital*, 105 Ill. App. 3d 850, 852-53 (1982)) but is instead a creature of statute. Thus, defendants and the Attorney General contend that the General Assembly is empowered to redefine the scope of the privilege. But section 2—1003(a) goes beyond merely delineating the scope of the physician-patient privilege: rather it essentially provides a mechanism for discovery of medical information that, by failing to meet the requirement of relevance, would not be discoverable regardless of the privilege. Stated differently, defendants and the Attorney General ignore the fact that the relevance requirement is an independent constraint on discovery: information does not become relevant—and thus subject to discovery—simply because it is not privileged.

Defendants and the Attorney General also insist that section 2—1003(a) affords the trial court discretion to limit disclosure, thereby safeguarding against the improper and abusive use of the consent procedure. They submit that the existence of such discretion is implicit in certain language in the statute and is supported by the legislative history of the provision. Plaintiffs respond that section 2—1003(a) provides for no such judicial oversight. We agree with plaintiffs.

The question presented is one of statutory construction, and familiar principles apply. The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994). In doing so the court should look first to the statutory language, which is the best indication of the legislature's intent. *Solich*, 158 Ill. 2d at 81. Where the meaning of an enactment is unclear from the statutory language itself, the court

may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy. *Solich*, 158 Ill. 2d at 81. Where statutory language is ambiguous, it is appropriate to examine the legislative history. *People v. Hickman*, 163 Ill. 2d 250, 261 (1994). However, when the language is clear, it will be given effect without resort to other aids for construction. *Hickman*, 163 Ill. 2d at 261; *Solich*, 158 Ill. 2d at 81.

Here, the language of the statute at issue is clear and unequivocal. In unqualified and unconditional terms, the statute directs personal injury plaintiffs to deliver signed consents to the release of medical information. There is no reference whatsoever to any form of judicial oversight or any discretionary power to safeguard against abusive use of the consent procedure. As written, section 2—1003(a) envisions disclosure of medical information without limitation, and without regard to the relevance of the information or the oppressive nature of disclosure. There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports, and a court is not at liberty to depart from the plain language of a statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Solich*, 158 Ill. 2d at 83.

In support of their construction, defendants and the Attorney General note language in section 2—1003(a) indicating that "[t]he provisions of this subsection (a) do not restrict the right of any party to discovery pursuant to rule." Defendants and the Attorney General apparently believe the "right to discovery pursuant to rule" embraces the right to apply for a protective order against requests for consents under section 2—1003(a). We disagree. Under our rules, discovery methods consist of depositions, written interrogatories to the parties,

discovery of documents, objects or tangible things, inspection of real estate, requests to admit, and physical and mental examination of persons. 166 Ill. 2d R. 201. The issuance of a protective order is not a type of discovery, rather it is a means of *limiting discovery*. The language in section 2—1003(a) preserving the right to discovery pursuant to rule only means that the legislature did not intend for the consent procedure to be exclusive, and that litigants may avail themselves of the methods of discovery provided for by our rules. In no way does this language place any limits on the consent procedure under section 2—1003(a).

Defendants and the Attorney General also rely on the portion of section 2—1003(a) stating that "[a] request for a Consent \*\*\* does not preclude such subsequent requests as may reasonably be made seeking to expand the scope of an earlier Consent *which was limited* to less than all the authority permitted by subdivisions (1) through (4) of this subsection (a) \*\*\*." (Emphasis added.) 735 ILCS 5/2—1003(a) (West 1994). Defendants and the Attorney General maintain that because the statute provides for expansion of a consent previously limited by a court, it necessarily recognizes the court's discretion to limit the scope of consents. The flaw in this argument is that this portion of the statute makes no reference to the consent being limited "by a court." Rather the reference to a limited consent simply means one which is limited by its own terms or is limited on its face. This provision contemplates the situation where, for whatever reason, a defendant initially requests consent to disclosure of less than all the types of medical information authorized under the statute, and later seeks to expand the request. Defendants' and the Attorney General's interpretation that "limited" means limited by the court is not a reasonable or plausible alternative. Any authority on the part of the trial court

to limit the scope of a consent would be meaningless if the requesting party could simply submit additional consents seeking the same type of disclosure.

Defendants and the Attorney General also rely on legislative history to support their view that section 2—1003(a) provides for judicial oversight of the release of medical information. During the proceedings in the House of Representatives, the sponsors of this measure indicated that under the consent procedure, the plaintiff had 28 days to obtain a court order limiting the extent of disclosure. See 89th Ill. Gen. Assem., House Proceedings, February 16, 1995, at 142 (statements of Representative Cross); 89th Ill. Gen. Assem., House Proceedings, February 16, 1995, at 164-65 (statements of Representative Ryder). However, because the language of the statute is plain and unambiguous, we have no occasion to consider its legislative history. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 216-17 (1994). We further note that while courts give some consideration to statements by a sponsor of a bill, such statements are not controlling. *People v. Hickman*, 163 Ill. 2d 250, 262 (1994). The statutory language at issue here is clear. The plaintiff's obligation to consent to the disclosure of medical information is absolute and unqualified; nowhere is it provided that the trial court may regulate the scope of disclosure.

Defendants and the Attorney General also direct our attention to a number of decisions where this court has upheld procedural statutes against separation of powers challenges. See, *e.g., DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57 (1992); *Strukoff v. Strukoff*, 76 Ill. 2d 53 (1979); *People v. Walker*, 119 Ill. 2d 465 (1988); *Niven v. Siqueira*, 109 Ill. 2d 357 (1985). The cases cited are inapposite, however, as they do not involve any claimed conflict between a statute and a supreme court rule. The trial court correctly ruled that section

2—1003(a) represents an impermissible encroachment upon the authority of the judicial branch.

## II

The trial court also concluded that section 2—1003(a) violates the right to privacy expressly set forth in our state constitution. We agree. Our constitution provides that "[t]he people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means." (Emphasis added.) Ill. Const. 1970, art. I, § 6. This court has observed that the Illinois Constitution goes beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy, and that the protection of that privacy is stated broadly and without restrictions. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 391 (1992). The confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy. Physicians are privy to the most intimate details of their patients' lives, touching on diverse subjects like mental health, sexual health and reproductive choice. Moreover, some medical conditions are poorly understood by the public, and their disclosure may cause those afflicted to be unfairly stigmatized. Respect for the privacy of medical information is a central feature of the physician-patient relationship. Under the Hippocratic Oath, and modern principles of medical ethics derived from it, physicians are ethically bound to maintain patient confidences. See *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 589 (1986).

In addition, this court has recognized that "[a] person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason. *** [T]he

individual's privacy interest in his physical person \*\*\*
must be protected." *Will County Grand Jury*, 152 Ill. 2d
at 391-92. We believe that this privacy interest pertain-
ing to individual physical characteristics necessarily en-
compasses personal medical information.

The text of our constitution does not accord absolute
protection against invasions of privacy. Rather, it is *un-
reasonable* invasions of privacy that are forbidden. In
the context of civil discovery, reasonableness is a func-
tion of relevance. In *Firebaugh v. Traff*, 353 Ill. 82 (1933),
a foreclosure action was brought by the trustee of a deed
of trust securing a bond issue. The trustee was held in
contempt for refusing to comply with a subpoena requir-
ing disclosure of the names and addresses of the
bondholders. The trustee argued that because the names
of the bondholders were not pertinent or material to the
case, the order that the names be produced violated the
constitutional prohibition against unreasonable searches
and seizures. This court agreed:

> "While courts have inherent power to order the produc-
> tion of books and papers, yet it is required that such order
> in all cases shall be a reasonable one. The constitutional
> protection is against unreasonable searches and seizures.
> [Citation.] It has been uniformly held that before an order
> can be entered for the production of books or writings by
> one of the parties there must be good and sufficient cause
> shown that the evidence sought to be obtained is pertinent
> to the issues in the case. \*\*\* Such an order cannot be used
> to procure a general investigation of a transaction not
> material to the issue." *Firebaugh*, 353 Ill. at 84-85.

While *Firebaugh* involved the prohibition against
unreasonable searches and seizures, the same analysis
applies where the privacy interest in medical informa-
tion is involved. It is reasonable to require full disclosure
of medical information that is relevant to the issues in
the lawsuit. But as previously noted, section 2—1003(a)
requires a blanket consent to disclosure of all medical
information without regard to the issues being litigated.

The scope of the required disclosure is unreasonable and unconstitutional.

Defendants and the Attorney General insist that section 2—1003(a) is constitutional because it contains adequate safeguards protecting the plaintiff's right to privacy. First, they contend that the trial court may limit the scope of disclosure under section 2—1003(a). This argument is without merit, as we have already concluded that section 2—1003(a) makes no provision for any judicial control of the scope of disclosure. Defendants and the Attorney General also point out that section 2—1003(a) provides that "[a]ll documents and information obtained pursuant to a Consent shall be considered confidential" and may only be disclosed to "the parties to the action, their attorneys, their insurers' representatives, and witnesses and consultants whose testimony concerns medical treatment, prognosis, or rehabilitation, including expert witnesses." However, even when limited to the persons listed, disclosure of highly personal medical information having no bearing on the issues in the lawsuit is a substantial and unjustified invasion of privacy.

Defendants also contend that section 2—1003(a) does not run afoul of the prohibition of unreasonable invasions of privacy because, according to defendants, that prohibition "does not apply to actions between private parties." However, section 2—1003(a) provides for state action as the means to compel the disclosure of constitutionally protected medical information: where a party fails to tender a consent the trial court may either dismiss the lawsuit or enter an order authorizing disclosure of the requested medical information. Defendants' argument is without merit.

Accordingly, the trial court correctly ruled that sec-

tion 2—1003(a) violates the constitutional prohibition of unreasonable invasions of privacy.

## III

In addition to holding that section 2—1003(a) violated the doctrine of separation of powers and the prohibition against unreasonable invasions of privacy, the trial court also ruled that the statute was unconstitutional because "the Authorization of Release of Medical Information is overly coercive and prevents a Plaintiff from making a free and consensual decision." While the trial court cited no specific provision of the constitution as the basis for this ruling, on appeal plaintiffs rely on section 1 of article I of the Illinois Constitution of 1970, which states:

> "All men are by nature free and independent and have certain inherent and inalienable rights among which are life, liberty and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed." Ill. Const. 1970, art. I, § 1.

With reference to an almost identical provision in the Illinois Constitution of 1870 (see Ill. Const. 1870, art. II, §1), it has been observed that this section "is not generally considered, of itself, an operative constitutional limitation upon the exercise of governmental powers. Rather it is considered supplemental to and implicitly within [the due process clause]. There is thus little purpose in treating this section as an independent source of constitutional law." G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 8 (1969). Accordingly, we find no adequately articulated basis for the trial court's ruling that section 2—1003(a) is unconstitutional because it is "overly coercive." However, because we agree with the trial court's other constitutional rulings, we affirm the order declaring section 2—1003(a) unconstitutional.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.