2022 IL App (1st) 210993-U

FIFTH DIVISION
December 2, 2022

No. 1-21-0993

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court of |
| | ) Cook County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 18 CR 02200 |
| | ) |
| GUILLEROMO ARAIZA, | ) |
| | ) Honorable Joseph Michael Cataldo, |
| Defendant-Appellant. | ) Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.[1]
Presiding Justice Connors and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    ***Held:***  Defendant's statutory right to a speedy trial was not violated.  Affirmed.

¶ 2    Following a jury trial, defendant Guillermo Araiza was convicted of two counts of criminal sexual assault and one count of aggravated criminal sexual abuse.  The circuit court then sentenced him to an aggregate term of 17 years' imprisonment.  On appeal, defendant contends that our

---

[1] On July 12, 2022, this case was marked "ready" and assigned to another justice for disposition.  On October 17, 2022, following that justice's retirement, this case was reassigned to the current authoring justice and panel.

supreme court violated both the separation of powers pursuant to the state constitution (Ill. Const. 1970, art. II, § 1) and also his statutory right to a speedy trial pursuant to section 103-5 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/103-5 (West 2020))—commonly referred to as the Speedy Trial Act (the Act)—when it issued an order allowing the court to continue his trial without attributing the delay to the State. We affirm.

¶ 3                                                      BACKGROUND

¶ 4      The State charged defendant with five counts of criminal sexual assault and three counts of aggravated criminal sexual abuse against his stepdaughter, L.A. On January 14, 2018, defendant was arrested, and on January 17, 2018, he appeared in bond court where the circuit court appointed the public defender as his defense counsel. The matter was then continued "motion state" (*i.e.*, with the delay attributed to the State) to February 8, 2018, a period of 25 days. Beginning on February 8, 2018, and continuing multiple times until March 9, 2020 (783 days), this matter was continued "by agreement" (*i.e.*, with the delay not attributed to the State).[2]

¶ 5      On March 9, 2020, Governor JB Pritzker declared every county in Illinois a disaster area in response to the COVID-19 pandemic. On this same date, the case was further continued by agreement to March 12, 2020, because defendant was in "medical isolation." On March 12, 2020, the matter was continued by agreement to April 13, 2020.

¶ 6      On March 13, 2020, the president of the United States declared the COVID-19 outbreak a national emergency. On that same day, the chief judge of the circuit court of Cook County entered General Administrative Order ("GAO") No. 2020-01 in response to the pandemic. With certain exceptions not relevant here, the order, effective March 17, 2020, continued all matters for a period

---

[2]  Although defense counsel initially demanded trial on April 30, 2019, she subsequently withdrew that demand and then agreed to the State's request for a continuance until June 10, 2019.

of 30 days. Cook Co. Cir. Ct. Adm. Order 2020-01 (Mar. 13, 2020). This order further provided that, in all divisions, judges would be available in person to hear emergency matters, and that in the criminal division specifically, preliminary hearings and jury trials in progress would proceed as scheduled, and court would be in session for plea agreements. *Id.*

¶ 7 On March 17, 2020, our supreme court entered an order in response to the still-unfolding pandemic. Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). This order directed courts to "continue to establish and periodically update, as necessary, temporary procedures to minimize the impact of COVID-19 on the court system, while continuing to provide access to justice." The order further allowed all courts, "in both civil and criminal matters," to (1) "[m]odify or suspend any deadlines and procedures, whether prescribed by local rule or order, for a stated period ending no later than 30 days after the Governor's state of emergency declaration has been lifted"; and (2) "take any other reasonable action to avoid exposing court proceedings to the threat of COVID-19." *Id.*

¶ 8 On March 20, 2020, the supreme court revised its order and authorized the chief judges of each circuit to continue trials "for the next 60 days and until further order of the court." Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). As is relevant here, the order stated, "In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the [Code]." *Id.*

¶ 9 On March 30, 2020, the chief judge of the circuit court amended GAO No. 2020-01. The amended order now provided that "all matters in all Districts and Divisions of the court" were continued for a period of "30 days from the originally scheduled court date or a date not more than 30 days after May 18, 2020, whichever is later" or the next business day if that last day fell on a weekend or court holiday. Cook Co. Cir. Ct. Adm. Order 2020-01 (Mar. 30, 2020). The order also directed that (1) all hearings were to be conducted by videoconference or teleconference,

(2) no more than ten people would be in the courtroom at the same time, and (3) all people in the courtroom had to be at least six feet from the other people in the courtroom. *Id.* With respect to the Criminal Division of the court, the order stated, "Any delay resulting from this emergency continuance order shall not be attributed to either the State or the defendant for purposes of section 103-5 *** of the [Code]." *Id.*

¶ 10    On April 3, 2020, the supreme court again amended its order of March 20, 2020. See Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020). This amended order stated that "the Chief Judges of each circuit may continue trials until further order of this Court" *Id.* The amended order reiterated that, as to criminal cases, any delay resulting from "this emergency continuance" would not be attributed to either the State or the defendant for purposes of section 103-5 of the Code. *Id.*

¶ 11    On April 7, 2020, the court further amended its April 3 order to clarify that, "in order to prevent the spread of the novel coronavirus; and in the interests of the health and safety of all court users, staff, and judicial officers during these extraordinary circumstances," trial continuances "serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial," and would therefore be "excluded from speedy trial computations." See Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 12    On April 13, 2020, the parties appeared in court, as this matter had been set for trial for that day. Defendant, however, was in the hospital and unable to appear. Defense counsel requested a bond hearing due to COVID and defendant's underlying health conditions. The circuit court denied the motion, and the matter was continued by agreement, to May 22 and then June 17, 2020.[3]

---

[3] There is no report of proceedings for the May 22, 2020, hearing. The common law record, however, indicates that the June 17, 2020, date was set "by agreement." In the absence of a complete record on appeal, we must construe any ambiguity in the record against the appellant (here, defendant). *Foutch v. O'Bryant,* 99 Ill. 2d 389, 391-92 (1984).

¶ 13    On May 1, 2020, the chief judge of the circuit court of Cook county amended GAO No. 2020-01 providing in relevant part that "all matters in all Districts and Divisions of the court are rescheduled and continued for a period of 30 days from the originally scheduled court date or a date not more than 30 days after May 31, 2020, whichever is later," or the next business day if the last day ended on a weekend.  Cook Co. Cir. Ct. Adm. Order 2020-01 (May 1, 2020).

¶ 14    On May 20, 2020, the Illinois Supreme Court amended its March 17, 2020, order, stating that, effective June 1, 2020, each circuit could return to hearing court matters, whether in person or remotely, "according to a schedule to be adopted for each county by the chief judge in each circuit."  See Ill. S. Ct., M.R. 30370 (eff. Jun. 1, 2020).  The court added that it was amending its April 7, 2020, order to allow the chief judges of each circuit to continue trials "until further order of this Court," noting that the continuances "serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial."  *Id.*  The court then stated that any such continuances would be "excluded from speedy trial computations."  *Id.*  Finally, the court directed that "[t]his provision also applies when a trial is delayed when the court determines proper distancing and facilities limitations prevent the trial from proceedings safely."  *Id.*

¶ 15    On May 28, 2020, the chief judge of the circuit court of Cook county amended GAO No. 2020-01, continuing all matters for 30 days but not to exceed more than 30 days after July 6, 2020. See Cook Co. Cir. Ct. Adm. Order 2020-01 (May 28, 2020).  The order again stated that any delay resulting from this order would not be attributed to either the State or defendant "for purposes of section[] 103-5 (speedy trial) *** of the Code."  *Id.*  It further directed judges to "review pending cases to determine a new date that cases can be scheduled."  *Id.*

¶ 16    On June 4, 2020, the presiding judge of the criminal division issued an order effective June 8, 2020, and "until further order of the court."  See Cook Co. Cir. Ct. Crim. Div. Order (Jun. 8,

2020). The order stated, "Consistent with current operations, all matters will be heard via Zoom. There will be no in-court proceedings. Only the judge, court clerk and deputy will be allowed in the courtroom." The order further directed that, "[d]uring this period, judges will not conduct evidentiary hearings or trials."

¶ 17 On June 17, 2020, the parties appeared to set a trial date. Defense counsel said the State could pick a trial date and added, "I cannot go by agreement anymore." The circuit court then continued the matter—on the State's motion—to July 8, 2020.

¶ 18 On June 26, 2020, the chief judge of the circuit court of Cook county issued GAO No. 2020-02. See Cook Co. Cir. Ct. Adm. Order 2020-02 (July 6, 2020). This order superseded GAO No. 2020-1 and provided in pertinent part that, effective July 6, 2020, the circuit court would begin hearing "all matters in all Districts and Divisions of the court with the exception of jury trials." *Id.* The order added that any delay resulting from the order would not be attributed to either the State or the defendant "for purposes of section 103-5 (speedy trial) of the Code." *Id.* The circuit court amended this order multiple times, including July 29, August 21, September 3, September 21, and October 16, 2020. All of these amendments, however, still prohibited jury trials. See *id.* (eff. July 19, 2020; Aug. 21, 2020; Sept. 3, 2020; Sept. 21, 2020; Oct. 16, 2020).

¶ 19 On July 8, 2020, the parties appeared via videoconference for a hearing on defense counsel's motion to review defendant's bond. Counsel noted that the matter was set for jury trial that day but "due to the "Chief Judge's order," the parties were unable to proceed. The court denied the motion to reduce defendant's bond and continued the matter "motion state" to July 27, 2020. The matter was later continued "motion state" to August 27 and then October 19, 2020.

¶ 20 On October 19, 2020, the parties appeared via videoconference in the circuit court "for a jury trial," but the court noted that no jurors were in the building. Defense counsel noted that it

6

had recently filed a "motion to review bond," seeking a bond of between $50,000 and $75,000. Counsel argued that the delay in trial was through no fault of defendant. Counsel further stated that she had "a demand pending for 123 days" and "demanded past term." The court denied defendant's motion, and replied that, with respect to the speedy trial objection, the supreme court "has stayed [jury trials]." The court continued the matter, "motion state," to November 30, 2020.

¶ 21    On November 23, 2020, the chief judge of the circuit court of Cook County entered GAO 2020-07. This order, which superseded GAO 2020-02, stated in relevant part that no criminal bench trials and no jury trials "of any kind" would be held until further order of the court. Cook Co. Cir. Ct. Adm. Order 2020-07 (Nov. 23, 2020). It again added that any delays resulting "from this order or *** [GAOs] 2020-01 and 2020-02 shall not be attributable to either the State or the defendant for purposes of the section 103-5 (speedy trial) of the Code ***." *Id.*

¶ 22    On November 30, 2020, the parties appeared via videoconference in the circuit court. The court stated that, although the matter was scheduled for a jury trial, there still were no jurors "in this building or any building in Cook County" due to various Covid-related orders for the safety of the public. The court again stated that defendant's trial would be "the first jury trial we do" when jurors are available. The court then continued this cause, "motion state," for jury trial to January 5, February 8, and then April 12, 2021.

¶ 23    On February 11, 2021, the Illinois Supreme Court amended its order of March 17, 2020. See Ill. S. Ct., M.R. 30370 (Feb. 11, 2021). This order provided that, although certain proceedings in criminal cases could be held remotely without a defendant's consent, bench trials and stipulated bench trials could only be held remotely with a defendant's written consent and the trial court's finding that doing so would not "jeopardize the integrity of the trial process." *Id.* Nonetheless,

7

the order still prohibited jury trials from being held remotely, "[e]ven when the defendant has consented." *Id.*

¶ 24 On March 23, 2021, the chief judge of the circuit court of Cook County amended GAO 2020-07. See Cook Co. Cir. Ct. Adm. Order 2020-07 (eff. Mar. 23, 2021).[4] Both orders set a "target date[]" for jury trials of March 22, 2021, "beginning with a jury trial in the Leighton Criminal Courthouse on or about March 22 and a jury trial at the Fifth Municipal District (Bridgeview) on or about March 29." *Id.* The orders further stated that—consistent with supreme court order M.R. 30370 and "resources and public health guidelines permitting"—jury trials would gradually be expanded to other courthouses after May 3, 2021. *Id.*

¶ 25 On April 12, 2021, the parties appeared via videoconference in the circuit court. Although defendant's jury trial was set to begin on that day, the State informed the court, "We do not have jurors." The matter was continued on the State's motion to May 3, 2021.

¶ 26 On May 3, 2021, the parties physically appeared in court. Defense counsel argued that the circuit court should dismiss the charges against defendant because his right to a speedy trial was violated. Counsel further argued that, since the Act was a "legislative statute," the supreme court lacked the authority to suspend jury trials. The State responded, that, up until defendant's demand on June 17, 2020, there were 39 days of delay attributed to the State, when "the world was in the midst of a pandemic" and there were no jurors called to any courthouse in Cook County. The State then noted, "Today, for the first time, jurors have come back to Rolling Meadows courthouse, and there are sufficient jurors present today for the State to move forward." The court denied the

---

[4] This order was further amended on April 23, 2021, but that amended order made nonsubstantive changes not relevant to this appeal. See Cook Co. Cir. Ct. Adm. Order 2020-07 (eff. Apr. 23, 2021).

motion, and the parties discussed various pretrial matters. Jury selection took place on May 4, 2021, and trial began the following day.

¶ 27   Defendant does not contest the sufficiency of the evidence, so we limit our recitation of the evidence adduced at trial. L.A. testified that she was born on November 11, 2001; defendant was her stepfather; and she lived in an apartment with her mother, defendant, and three sisters. Beginning around November 2009, defendant started touching her inappropriately. Specifically, defendant would kiss her on the lips and neck and touch her vagina on top of and underneath her pants with his hand. L.A. stated that this occurred "definitely more than once or twice." Defendant told her to not to tell her mother, and L.A. did not tell anyone. The touching and kissing stopped after about a year but began again six or seven years later, when L.A. was 14 or 15.

¶ 28   On January 14, 2018, L.A. went into the bedroom that her mother and defendant shared to retrieve her cellphone. After L.A. picked up her phone, she heard the door close behind her and lock. Defendant was standing at the bedroom door in his underwear. Defendant walked toward L.A., pushed her onto the bed, and began kissing her neck, grabbing her breast. Defendant then flipped her over, began kissing her vagina, buttocks, and anus, and then put his penis inside L.A.'s vagina. Although L.A. said, "No," defendant continued. Defendant eventually stopped and went to the bathroom, at which point L.A. got off the bed, took her clothes, and left the room. After about an hour or two, defendant left for work.

¶ 29   L.A. then sent a text message to her friend, "Sophia." Sophia testified that, after she received the text message, she left her house with her brother to take L.A. to the hospital. L.A. appeared distraught and as though she had been crying. Sophia called her mother and asked her to meet them at the hospital. At the hospital, L.A. told Sophia's mother what had happened, and

L.A. was administered a sexual assault evidence collection kit. DNA collected from one of the various swabs matched defendant "at all 23 locations," and other swabs were a "partial" match.

¶ 30    The State rested, and defendant opted not to present any evidence. Following closing arguments, the jury found defendant guilty of all charges: two counts of criminal sexual assault and one count of criminal sexual abuse.[5] The circuit court continued the matter for sentencing.

¶ 31    On June 30, 2021, the supreme court ordered that, effective October 1, 2021, the Act "shall no longer be tolled." See Ill. S. Ct., M.R. 30370 (Jun. 30, 2021). The court reiterated that, days prior to March 20, 2020, and "[a]ll days on and following October 1, 2021, would be included in speedy trial computations pursuant to [the Act]. *Id.*

¶ 32    On August 13, 2021, the circuit court held a hearing on defendant's amended motion for a new trial and for sentencing. Defendant argued, *inter alia*, that the court erroneously denied his motion to dismiss based upon a violation of his statutory right to a speedy trial. The court denied defendant's motion, finding in part that his trial began on "the first possible day the courthouse was okay [*sic*] for [a] jury trial." The cause then proceeded to sentencing. Following the presentation of evidence, arguments in aggravation and mitigation, and defendant's statement in allocution, the court sentenced defendant to consecutive terms of seven years' imprisonment for the two criminal sexual assault convictions and three years' imprisonment for the criminal sexual abuse conviction. This appeal follows.

¶ 33                                  ANALYSIS

¶ 34    On appeal, defendant contends that the circuit court erroneously denied his motion to dismiss his charges based upon a violation of his statutory right to a speedy trial. Specifically,

---

[5] Before trial, the State nol prossed three of the five counts of criminal sexual assault and two of the three counts of criminal sexual abuse.

defendant argues that the Illinois Supreme Court and circuit court of Cook County's COVID-19-related orders tolling the Act were invalid as they violated the constitutional principle of the separation of powers.[6]

¶ 35    As applied to individuals in custody (here, defendant) the Act provides in relevant part: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he *** was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2020). "Delay shall be considered to be agreed to by the defendant unless he *** objects to the delay by making a written demand for trial or an oral demand for trial on the record." *Id.*

¶ 36    If the orders from our supreme court and the circuit court of Cook County were valid, then the speedy trial term in this case only ran for 25 days:  from the date of his arrest on January 14, 2018, to February 8, 2018.  At that point, defendant agreed to all subsequent continuances from February 8, 2018, until June 17, 2020.  Although defendant demanded trial on June 17, 2020, the various court orders noted above had already tolled his speedy trial term.  In addition, although defendant's trial began on May 5, 2021, his speedy trial term was tolled until long after this date. Therefore, there was no speedy trial violation unless the courts exceeded their authority in tolling speedy trial demands.

¶ 37    Defendant's arguments are primarily directed at the supreme court's order tolling defendants; speedy trial demands.  At oral argument, defendant essentially conceded that he was inviting us to overturn or otherwise vitiate an order of our supreme court.  We must, however,

---

[6]  Although defendant makes isolated references to the sixth and fourteenth amendments of the federal constitution (which prompts the State to respond that defendant has forfeited those "claims" for failure to support them with a developed argument), defendant has confirmed in his reply brief that his contention of error is solely predicated upon the alleged statutory violation.

decline that invitation because we may not overrule the decisions of the supreme court. See, *e.g.*, *People v. Minor*, 2019 IL App (3d) 180171, ¶ 22. Similarly, the circuit court could not do so either. *Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 55 ("Trial and appellate courts are bound by the supreme court and have no authority to overrule the supreme court or modify its decisions.") (citing *Angelini v. Snow*, 58 Ill. App. 3d 116, 119 (1978)). On the basis of vertical *stare decisis* alone, we would be justified in affirming the judgment of the circuit court.

¶ 38    The issue is a bit more complicated, though. The circuit court, not the supreme court, entered the continuance orders. In addition, defendant's notice of appeal seeks review of his conviction and sentence, which again the circuit court—not the supreme court—entered. Furthermore, the supreme court orders did not *require* any circuit court in this state to delay trials; rather, they merely stated that the chief judges of the state circuit courts "may" or were "allowed" to continue trials due to the statewide pandemic without attributing any such delay to the State. See Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020; Mar. 20, 2020; Apr. 3, 2020; Apr. 7, 2020; June 1, 2020). Finally, the orders were general administrative orders, which were not directed at a particular case, but rather to *all* circuit courts in this state. See *id.* Therefore, we will review defendant's claim that those orders violated the constitutional doctrine of separation of powers, and if so, whether the circuit court should have granted defendant's motion to dismiss based upon a statutory speedy trial violation.

¶ 39    The separation of powers clause of the Illinois Constitution provides that the "legislative, executive and judicial branches are separate" and that "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Put simply, each branch of government has its own unique "sphere of authority." *People v. Peterson*, 2017 IL 120331, ¶ 29 (citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 410 (1997)).

¶ 40  Notably, however, this clause is not intended to achieve a complete divorce between the branches of government.  Rather, the separate spheres of authority exercised by each branch of government may overlap.  *Id.* ¶ 30; see also *Best*, 179 Ill. 2d at 411 (holding that the separation of powers clause is not violated "merely because separate spheres of governmental authority may overlap").  The purpose of the clause is to prevent "the whole power of two or more branches from residing in the same hands." *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997).  The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration. *Id.* (citing *People v. Williams,* 124 Ill. 2d 300, 306-07 (1988)).  "Ultimately, however, this court retains primary constitutional authority over court procedure." *Id.*  Therefore, the separation of powers clause is violated when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or "directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority." *Id.*  In that event, "where a rule of this court on a matter within the court's authority and a statute on the same subject conflict, the rule will prevail." *People v. Cox*, 82 Ill. 2d 268, 274 (1980).

¶ 41  The judicial article of the Illinois Constitution vests our supreme court with general administrative and supervisory authority over all courts.  Ill. Const. 1970, art. VI, § 16.  "This authority is unlimited in extent and hampered by no specific rules or means for its exercise." (Internal quotation marks removed.) *People v. Coty*, 2020 IL 123972, ¶ 49 (quoting *People v. Salem*, 2016 IL 118693, ¶ 20 (quoting *In re Estate of Funk*, 221 Ill. 2d 30, 97 (2006))).  It is an unequivocal grant of power that extends to not only the adjudication and application of law but also the procedural administration of the courts. *Id.* (quoting *Salem*, 2016 IL 118693, ¶ 20 (quoting *People v. Whitfield*, 228 Ill. 2d 502, 521 (2007))).

¶ 42 "This grant of authority 'clearly empowers [the supreme] court to promulgate procedural rules to facilitate the judiciary in the discharge of its constitutional duties.' " *Peterson*, 2017 IL 120331, ¶ 29 (quoting *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 281 (1986)). Thus, the conferring of judicial power to the supreme court includes rulemaking authority to "regulate the trial of cases." *Id.* (citing *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997); *Cox*, 82 Ill. 2d at 274).

¶ 43 Our standard of review for a statutory speedy-trial issue is bifurcated: (1) we will uphold the circuit court's determination as to who is responsible for a delay in trial absent an abuse of discretion, and (2) we review *de novo* the ultimate question of whether the defendant's statutory right was violated." *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 56. Defendant's challenge to the constitutionality of supreme court orders presents a question of law that we review *de novo*. See *People v. Fuller*, 324 Ill. App. 3d 728, 731 (2001).

¶ 44 This court has recently considered—and rejected—the same issue defendant raises here. See *People v. Mayfield*, 2021 IL App (2nd) 200603, *appeal allowed*, No. 128092 (Mar. 30, 2022). In that case, the court held that the "scheduling of criminal trials is a matter of procedure within the realm of our supreme court's primary constitutional authority" that prevails over the Act. *Id.* ¶ 21 (citing *Kunkel*, 179 Ill. 2d 519). The court further held that the supreme court had the authority to toll the time requirements of the Act and observed that the supreme court exercised that authority "in response to a pandemic that threatened the health and safety of millions of Illinois residents." *Id.* The *Mayfield* court then concluded that the supreme court's exercise of its constitutional authority prevailed over the Act. *Id.* ¶ 21.

¶ 45 The court further swept aside the defendant's reliance upon Illinois Supreme Court Rule 1 (eff. July 1, 1982)—which we note defendant in this case also relies upon. *Id.* ¶ 25. The Rule states as follows:

"General rules apply to *** criminal proceedings. The rules on proceedings in the trial court, together with the *** Code ***, shall govern all proceedings in the trial court, except to the extent that the procedure in a particular kind of action is regulated by a statute other than the Civil Practice Law." *Id.* (citing Ill. S. Ct. R. 1 (eff. July 1, 1982).

¶ 46    The *Mayfield* court explained that our supreme court "did not subordinate itself to the legislature through Rule 1." *Id.* The court quoted a prior decision in which the supreme court explained the "scope" of the rule: " 'This court has upheld procedures where the legislature's enactments affect proceedings in an action statutory in origin and nature *as long as they do not conflict with a rule of this court.*' " (Emphasis in the original.) *Id.* (citing *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 284-85 (1988)). The *Mayfield* court then held that the supreme court had the authority to toll speedy-trial terms "in response to the extraordinary and dire circumstances that existed when the orders were entered." *Id.* ¶ 25.

¶ 47    We agree with the reasoning and holding of *Mayfield*, as have other districts of this court, and we follow it here, as well. See *People v. Burton*, 2022 IL App (1st) 210913-U, ¶ 42, *pet. for leave to appeal pending*, No. 128910 (Sept. 16, 2022); *People v. Jones*, 2022 IL App (4th) 200638-U, ¶ 41, *pet. for leave to appeal pending*, No. 128618 (June 21, 2022); *People v. Weis*, 2022 IL App (5th) 210076-U, ¶ 84, *appeal denied*, No. 128469 (Sept. 28, 2022). Defendant correctly points out that the legislature passed various pandemic-related laws, including one that authorized the sale of bottled alcoholic cocktails (see P.A. 101-0631 (eff. Jun. 2, 2020), *codified at* 235 ILCS 5/6-28.8 (West 2020)), but it failed to authorize the tolling of the Act. Although it is regrettable that the legislature focused its attention on the sale of alcohol rather than pandemic-

caused delays in a detained individual's statutory right to a speedy trial, we are nonetheless bound by points of law that are crystal clear: (1) the separate spheres of authority exercised by each branch of government may overlap without violating the separation of powers clause (see *Peterson*, 2017 IL 120331, ¶ 30; *Best*, 179 Ill. 2d at 411); and (2) in the event of a conflict between a supreme court rule on a matter within the court's authority and a statute on the same subject, the rule prevails (see *Cox*, 82 Ill. 2d at 274). We must therefore reject defendant's claim of error.

¶ 48    Nonetheless, defendant argues that courts cannot read an exception into a statute that was not included by the legislature and cites several cases in support of this proposition, including *Corbin v. Schroeder*, 2021 IL 127052; *People v. Wooddell*, 219 Ill. 2d 166 (2006); *Citibank, N.A. v. Illinois Dep't of Revenue*, 2017 IL 121634; and *In re Marriage of Turk*, 2014 IL 116730. Defendant's reliance, however, is misplaced because those cases solely concern the interpretation of a statutory provision. See *Corbin*, 2021 IL 127052, ¶ 33; *Wooddell*, 219 Ill. 2d at 170; *Citibank*, 2017 IL 121634, ¶ 1; *Turk*, 2014 IL 116730, ¶ 14. Here, by contrast, the issue concerns whether (1) a statutory provision regarding the administration of the court system or (2) an order of our supreme court regarding the same matter prevails when there is a conflict between them. As noted above, our supreme court has consistently held that the order prevails. Defendant's reliance upon *Corbin*, *Wooddell*, *Citibank*, and *Turk* are therefore unavailing.

¶ 49                                    CONCLUSION

¶ 50    Based on the circumstances presented in this case, we cannot find that defendant's right to a speedy trial was violated. Accordingly, we affirm the judgment of the circuit court.

¶ 51    Affirmed.