THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL RICKMAN, Defendant-Appellant.

Third District   No. 78-208

Opinion filed July 6, 1979.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michaèl M. Mihm, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of conviction entered by the Circuit Court of Peoria County after a trial without jury. The defendant, Michael Rickman, was found guilty of two counts of aggravated battery.

The incident which resulted in the charges took place on July 2, 1977. On July 5, 1977, defendant was charged with two counts of battery. On August 25, 1977, an information was filed charging defendant with two counts of aggravated battery. The first count charged defendant with striking, hitting, and kicking John Mingus, thereby causing Mingus great

bodily harm while committing a battery, knowingly and without justification. The second count contained identical allegations of battery on Gerald Brink. On October 13, 1977, the State filed an additional information charging the defendant with the theft of blue jeans from Montgomery Ward and Company. Defendant filed notice that he would raise the affirmative defense of the justifiable use of force.

Trial was held on October 21, 1977. The defendant moved to dismiss the theft count, but the State wished to join all three counts for trial. The court granted joinder, but indicated that a delay would be granted if all three charges were to be tried at once. In order to avoid delay the court then dismissed the theft count, without prejudice, and proceeded to trial on the aggravated battery counts.

John Mingus and Gerald Brink testified for the State; Rickman testified for the defense.

Mingus testified that he was the security manager of the Montgomery Ward store, but not a commissioned police officer. He was working at the store on July 2, 1977, at 11 a.m. He observed Rickman in the store and followed him to the parking lot in order to retrieve the merchandise which he believed that Rickman had taken from the store. Mingus then testified that he approached Rickman and showed his badge and identified himself as Montgomery Ward security. Rickman testified that Mingus did not show him a badge and he did not hear Mingus say he was a security officer.

Mingus then asked Rickman to turn over the pants that were taken. Rickman insisted that he had done nothing, but eventually gave Mingus a pair of pants, which according to Mingus he took from under his belt. Mingus grabbed at Rickman's collar and may have grabbed his skin, but Rickman escaped and fled through the parking lot. Mingus followed and yelled to him to stop and talk and the defendant stopped running and was grabbed by Mingus around the arms. Mingus had his handcuffs, which he had taken out during the encounter at the car, in his hand.

Brink, a commissioned police officer who was working for mall security in plain clothes, had seen Mingus pursuing Rickman through the lot. Brink was driving a mall security car with lights on top at the time. According to Mingus and Brink the defendant struggled to escape the grasp of Mingus, and Brink attempted to assist him in restraining the defendant. Brink took out his handcuffs and managed to get one cuff on defendant's left wrist after Mingus failed to handcuff him. The defendant struggled to prevent the attachment of the second handcuff.

During the struggle the defendant fell directly on top of Mingus' ankle and Mingus then fell to the ground with a broken ankle. Mingus testified that the defendant never threw him during the struggle; that there was apparently no way anyone could have prevented the broken

ankle as a result of the fall. Brink testified that he did not know how Mingus and the defendant fell.

The defendant then broke loose from Mingus and stood up. Brink grabbed the defendant in order to attach the second handcuff and the struggle continued. According to Brink he and the defendant were standing in a slightly crouched position as Brink attempted to force the defendant to the ground. Brink had one arm on defendant's shoulder and the other hand on his hair. The defendant resisted by shoving, hitting, and kicking Brink as they faced one another. Brink testified that the defendant kicked him in the legs four or five times and on the last kick he felt his leg snap and heard a loud crack. Brink fell to the ground and pulled the defendant down. Brink testified at the trial that a direct kick at the break caused his broken leg. At the preliminary hearing Brink had testified only that the defendant was struggling by hitting and kicking but denied that the defendant kicked him in the area of the break. Brink insisted that the injury did not result from the defendant falling on his leg.

Brink then yelled to Mingus that his leg was broken. He feared further harm so he drew his gun from its holster in order to subdue the defendant. Since the defendant was close to Brink, he struck the defendant across the face with his gun. During further struggle the defendant fell near Mingus, who hit him across the face with his handcuffs several times.

The defendant testified that when Mingus approached him near his car, Mingus grabbed him in a bear hug and lifted him off the ground, shaking him a little bit. The defendant began shaking in order to escape and Mingus then threw him to the ground. The defendant then said "I give" but Mingus used his weight to keep him down. Mingus replied that defendant would never give up and struck him behind the ear with his handcuffs. The defendant then began to fight to protect himself. During the struggle the defendant realized that someone had joined to assist Mingus, but did not know who the other person was.

The defendant is 5′ 9 ″ tall and weighs 140 to 160 pounds. Mingus is 6′ 3″ tall and weighs 195 to 200 pounds. Brink is 6′ 2″ tall and weighs 200 pounds.

The trial court found that there was sufficient proof of suspicious circumstances to justify a search and detention by Mingus, but found that no proof indicated that a shoplifting incident occurred. Since the defendant tried to get away from the detention and a struggle ensued, he must bear the consequences of that struggle. The court felt that since the defendant had fled once, there was reason for Mingus to fear conflict when he caught up to the defendant, so some force was warranted in order to restrain him. The court refused to believe defendant's version of the incident to the exclusion of the others.

On February 10, 1978, the defendant was sentenced under the new sentencing law which took effect on February 1, 1978. Because the offenses occurred prior to that date, the defendant was given an option to elect between the sentencing law in effect at the time of the offense and that in effect at the time of sentencing. At the hearing the court had the Assistant State's Attorney explain what the election involved. Defense counsel had discussed sentencing with the defendant more than once and the defendant elected to be sentenced under the new law.

The defendant was sentenced to a term of four years on each count of aggravated battery, the sentences to run concurrently.

On appeal the defendant raises the following issues: (1) whether the trial court erred in finding that the defendant was guilty beyond a reasonable doubt on count I charging aggravated battery; (2) whether the trial court erred in finding that the defendant was guilty beyond a reasonable doubt of count II charging aggravated battery; (3) whether defendant was denied equal protection and due process of law and his statutory right to election where the trial court did not permit him to make a meaningful choice between the old and new sentencing acts; (4) whether the defendant was denied his statutory right to a proper sentencing hearing where the trial judge failed to adequately specify the reasons for his sentencing determination on the record.

Count I of the information charged an aggravated battery against John Mingus, the security guard at Montgomery Ward and Company. During the scuffle the defendant fell on Mingus' ankle and the ankle was broken. Defendant argues that the State failed to prove that he knowingly caused great bodily harm to Mingus. He argues that a person knowingly causes great bodily harm when he is consciously aware that such a result is practically certain to be caused by his conduct. (*People v. Perry* (1974), 19 Ill. App. 3d 254, 311 N.E.2d 341.) He was attempting to escape, not harm Mingus.

The State argues that great bodily harm is an injury of a more serious character than an ordinary battery. Great bodily harm is a question of fact for the trier of fact to determine. (*People v. Carmack* (1977), 50 Ill. App. 3d 983, 366 N.E.2d 103.) That determination was made by the trial judge. The State also argues that a defendant is presumed to intend and to know the natural consequences of his acts. *People v. Smith* (1977), 46 Ill. App. 3d 474, 361 N.E.2d 69.

■■ We believe that the defendant's position is based upon a misinterpretation of *People v. Perry*. The court in that case held that the specific mental state required for the commission of aggravated battery is that the "* * * conduct of the defendant was performed 'knowingly' or 'intentionally'." (19 Ill. App. 3d 254, 257, 311 N.E.2d 341, 344.) The court in *Perry* also held, "The only mental state required is that the accused

knowingly and intentionally cause the social harm defined in the statute, *no premeditation or malice being necessary.*" (19 Ill. App. 3d 254, 259, 311 N.E.2d 341, 345.) In order for the defendant to be proved guilty of aggravated battery, the State need only show that he knowingly scuffled with Mingus and that Mingus received great bodily harm as a result of the scuffle. That the defendant did not intend to break Mingus' ankle is immaterial; he did intend to scuffle with Mingus and he must accept responsibility for the result of the scuffle. Anyone who engages in a scuffle must be deemed to be aware that someone may be injured as a result.

The defendant also argues that the State failed to prove that he acted without legal justification in defending himself because it failed to prove that Mingus had reasonable grounds to believe he had committed an offense. Since the theft charge was dismissed, no evidence sufficient to establish reasonable grounds that Mingus believed the defendant had committed a retail theft was introduced. If Mingus acted without reasonable grounds to believe that a retail theft had occurred, then his use of force was unlawful and the defendant was legally justified in his use of force.

The defendant argues that if Mingus is viewed as a private person, he could use only that force which he reasonably believed necessary to effect the arrest and which he reasonably believed necessary to defend himself or another from bodily harm while making the arrest. (Ill. Rev. Stat. 1977, ch. 38, par. 7—6.) If Mingus is viewed as an agent of a merchant, he could detain a person whom he reasonably believes committed a retail theft. (Ill. Rev. Stat. 1977, ch. 38, par. 16A—5.) In either view Mingus would have acted with lawful authority. The State agrees with this contention.

The State argues that Mingus saw the defendant in the store with the pair of jeans, followed him to the parking lot, and after identifying himself as a security officer, asked the defendant for the jeans. The defendant gave them to him and also offered to pay for the jeans. The State argues that intent is inferred from actions and the inference that the defendant intended to steal the jeans was justified by his actions.

■■ ■ We believe that Mingus had reasonable grounds to believe that a retail theft had occurred. We agree that there was no direct testimony that Mingus saw the defendant secrete a pair of blue jeans upon his person. However, we believe that there were sufficient suspicious circumstances shown from which it could reasonably be inferred that the defendant intended to steal the blue jeans. The defendant had the blue jeans under his belt, he gave them to Mingus and offered to pay for them. These are actions which are inconsistent with the purchase of the blue jeans. We therefore find that Mingus had reasonable grounds to believe a retail theft had occurred. He also had reasonable grounds to detain the defendant

and use that force necessary to effect that detention. The defendant had no justification in resisting that detention.

The defendant further argues that the State did not prove that the force used by Mingus was not excessive and therefore did not prove that defendant's response to that force was not legally justified. We have already decided that Mingus had the right to detain the defendant and the right to use the force necessary to effect the detention. The trial court did not believe defendant's version of the incident. The trial court did believe that because of the struggle by defendant, Mingus was entitled to use that force which was necessary to protect himself from bodily harm. We agree with the trial court and find no justification for the actions of the defendant.

The defendant also argues that the State failed to rebut the affirmative defense of justifiable use of force. He argues that when the defense is raised, the State must rebut the defense beyond a reasonable doubt. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) The test of whether the use of force by a defendant is justifiable is not whether the court thinks that the defendant's conduct is reasonable, but whether the defendant, acting as a reasonable man, thought his conduct was reasonable. *People v. Infelise* (1975), 32 Ill. App. 3d 224, 336 N.E.2d 559. ■ The defendant's statement of the law is correct; his interpretation of the facts is faulty. We believe that the defendant knew he had been caught and wished to escape. His fighting was not based on his belief that he would be wrongfully accused by a stranger, but on his attempt to escape from a security guard. Therefore, there was no reasonable belief on his part that his conduct was justified. We believe that there was sufficient testimony that the defendant was informed of the identity of Mingus and the reason why Mingus wanted to detain him. The trial court found Mingus a more credible witness than it found the defendant and we will not upset that finding. We therefore find that the defense of the justifiable use of force was rebutted.

The defendant also argues that the trial court erred in finding he was guilty beyond a reasonable doubt on the battery charge of Gerald Brink. He argues that since the presence of Mingus was not shown to be lawful, the presence of Brink was not lawful. Since we have already decided that Mingus acted lawfully we need not discuss at length that Brink also acted lawfully.

Defendant argues that he was denied equal protection and due process of law because the trial court did not permit him to make a meaningful choice between the old and new sentencing acts. He contends that he should have been told specifically what sentence the trial court would impose under each of the acts in order to exercise his right to election meaningfully.

Since the filing of defendant's brief in this case, this court decided *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554. We ruled in *Peoples* that the right to elect between sentencing acts is a statutory right and not a constitutional right. We also ruled that the statute involved (Ill. Rev. Stat. 1977, ch. 38, par. 1008—2—4) provides that a defendant has the right to elect between schemes of sentencing and not between sentences. There is no provision that a trial judge must provide a defendant with alternate predetermined sentences before a defendant may meaningfully elect to be sentenced under the new or old sentencing law.

Defendant also complains that he was denied his rights because he was misinformed as to the application of good time credit under the act. His complaint involves the following statement by the Assistant State's Attorney who was explaining the difference between the sentencing acts:

"* * * and the sentence can be anywhere between two years and five years and under that sentence the Defendant can be eligible for release on the basis of a day for every day of good time served. So that if he was sentenced to a particular sentence between two and five years, then if he is on good behavior and does not lose any good time, he would be eligible for release in a year."

The record also indicates that defense counsel discussed sentencing with the defendant on more than one occasion.

■■ ■ We find that the difference in the sentencing acts was explained to the defendant and he was informed of the alternatives. We do not find that the trial court must do more than that. (*People v. Dozier* (1979), 67 Ill. App. 3d 611, 615, 385 N.E.2d 155; *People v. Peoples*.) We find that the Assistant State's Attorney's statement of the law was correct, although his example may be faulty. If there was error it is harmless.

■■ Lastly, the defendant argues that he was denied his statutory right to a proper sentencing hearing where the trial judge did not adequately specify the reasons for his sentencing determination on the record. We agree with this contention of the defendant. The Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(c)) clearly specifies what a trial judge must specify on the record when imposing sentence for a felony.

Therefore, it is the finding of this court that the judgment of the Circuit Court of Peoria County be affirmed in part and reversed in part, and that this matter be remanded for a proper sentencing hearing under the Unified Code of Corrections.

Affirmed in part, reversed in part, and remanded with directions.

STOUDER, P. J., and ALLOY, J., concur.