2022 IL App (1st) 210913-U

No. 1-21-0913

Order filed August 18, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 14792 |
| | ) | |
| JASON BURTON, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction and sentence are affirmed where: (1) defendant was proved guilty beyond a reasonable doubt of aggravated battery and (2) defendant's statutory speedy trial right was not violated.

¶ 2    Defendant Jason Burton appeals his conviction for aggravated battery of a peace officer. On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt and that delays associated with the COVID-19 pandemic violated his statutory right to a speedy trial.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Defendant was charged by indictment with one count of aggravated battery (720 ILCS 5/12-3.05(d) (West 2018)) and numerous firearm offenses, including armed habitual criminal. He was arrested on October 5, 2019, the same day the offenses were alleged to have been committed. Defendant was held in custody until December 7, 2020, when he was released on bail. Defendant's jury trial was conducted on May 11, 2021.

¶ 6    Prior to trial, defendant filed two motions to dismiss based on constitutional and statutory speedy trial violations. The thrust of defendant's argument was that the judicial orders tolling speedy trial calculations during the COVID-19 pandemic violated separation of powers principles. Defendant also argued that measures could have ameliorated the danger of COVID-19 and that the court's refusal to implement those measures was irrational. The State responded that both the Illinois Supreme Court and the Circuit Court of Cook County validly acted in tolling the running of the statutory speedy trial act due to the ongoing COVID-19 pandemic. The trial court denied both of defendant's motions, citing the "extraordinary pandemic" to conclude that the courts had the power to toll the application of the Speedy Trial Act (725 ILCS 5/103-5 (West 2020)).

¶ 7    At trial, Chicago Police Officer Alec Gomez testified that he responded to a call about a "person with a gun" and "people drinking." Gomez arrived at the 2900 block of West Fillmore Street, where he saw a group of individuals standing on the street. Some of the individuals were

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

holding clear plastic cups containing liquid. Gomez identified defendant as one of those individuals. Gomez exited the vehicle to engage defendant in a field interview.

¶ 8    Gomez began to walk towards defendant and defendant turned his body away from Gomez. Gomez attempted to engage defendant in conversation, but defendant threw his plastic cup to the ground and began running away. Gomez gave chase and caught up to defendant in the north alley of Fillmore Street after defendant slipped and fell. Gomez then was able to grab defendant and perform an emergency takedown. Just prior to the emergency takedown Gomez observed a black handgun fall from the front of defendant's person.

¶ 9    After the emergency takedown, Gomez was on top of defendant. Defendant immediately began resisting by tensing his muscles and moving his body and arms. Defendant was able to use his strength to overpower and turn Gomez over to his back. Defendant was directly on top of Gomez. Defendant then pushed Gomez's chest and was able to break free. Defendant fled again westbound through the same alley.

¶ 10    Gomez again pursued defendant through the alley. Defendant turned southbound to go through a back yard. Defendant and Gomez entered a gangway with a fence to their left. Gomez was able to pin defendant up against the fence and call for backup. When backup arrived, Gomez brought defendant to the ground and handcuffed him. Gomez then went back to the location where the handgun fell and his partner recovered a handgun.

¶ 11    Gomez testified that during the "incident" he received abrasions to both of his knees, to his right elbow, and to the area underneath his right eye. Photographs were admitted showing these injuries.

¶ 12    Gomez's body camera was admitted into evidence. The video generally corroborated Gomez's testimony that defendant fled from him on two occasions and engaged in a struggle with Gomez prior to defendant's ultimate apprehension. The parties stipulated that defendant had previously been convicted of two qualifying felony offenses.

¶ 13    Chicago Police Officer Charles O'Connor testified that he was Gomez's partner on the evening of October 5, 2019. Officer O'Connor approached the same group as Officer Gomez to conduct a field interview. O'Connor heard some commotion and then observed Officer Gomez chasing someone. O'Connor also gave chase before realizing that the squad car was still running, with the keys in the ignition and the car unsecured. O'Connor returned to the vehicle and used the vehicle to cut off the foot pursuit. O'Connor eventually caught up to the area where Officer Gomez had defendant detained. O'Connor then recovered a firearm from an area that Officer Gomez led him to. Officer O'Connor also testified to statements made by defendant to another individual while in a holding cell. Officer O'Connor testified that defendant said: "[I]t was his pipe, that he always carries a pipe, he was on the block for protection, [and] that he won't let anyone put hands on him let alone the police."

¶ 14    The jury found defendant guilty of aggravated battery and not guilty of armed habitual criminal. The trial court sentenced defendant to 8 years' imprisonment. Defendant was sentenced on June 15, 2021. Defendant filed a motion to reconsider, which was denied, and a notice of appeal on the date he was sentenced. This is a direct appeal of the trial court's judgment.

¶ 15                                    II. ANALYSIS

¶ 16    We first address defendant's argument that the State failed to prove that he committed aggravated battery beyond a reasonable doubt. Defendant contends that there was an "abject dearth

of evidence" as to how Gomez received the abrasions. Defendant argues that the State declined to directly ask Gomez how he received the abrasions during the foot pursuit.

¶ 17    The State responds that defendant "knowingly struggled" with Officer Gomez and, thus, must accept responsibility for the result of the scuffle. The State continues that it was practically certain that Officer Gomez would be hurt during defendant's "repeated struggles and fights." The State concludes that we should not reweigh the evidence and substitute our judgment for that of the trier of fact.

¶ 18    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 19    Defendant was convicted of one count of aggravated battery in violation of 720 ILCS 5/12-3.05(d)(4)(i) (West 2018). To sustain its burden of proof on the aggravated battery charge, the State needed to prove that defendant battered an individual knowing the individual to be a peace officer performing his or her official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2018). A person

commits battery if he or she "knowingly without legal justification by any means [] causes bodily harm to an individual." 720 ILCS 5/12-3(a) (West 2018). Proof of bodily harm requires "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256 (1982).

¶ 20    A person acts knowingly regarding the nature of his conduct when he is "consciously aware" that his conduct is of the nature "described by the statute defining the offense." 720 ILCS 5/4-5(a) (West 2018). A person acts knowingly regarding the result of his conduct in a battery case when he is "consciously aware that [bodily harm] is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2018). "It is not necessary that the State prove that the defendant intended the specific consequence that occurred." *People v. Isunza*, 396 Ill. App. 3d 127, 132 (2009). Instead, a person engaged in a wrongful act is responsible even for a result not intended where the result is a "natural and probable consequence" of the wrongful conduct. *Id*.

¶ 21    The State relies primarily on two cases that stand for the proposition that "[a]nyone who engages in a scuffle must be deemed to be aware that someone may be injured as a result." *People v. Rickman*, 73 Ill. App. 3d 755, 760 (1979). In *Rickman*, the defendant was approached by a security officer who reasonably believed the defendant had shoplifted a pair of jeans from a store. *Id*. at 758. The security officer grabbed the defendant to detain him. *Id.* Another officer joined and the two attempted to detain defendant and place him in handcuffs. *Id.* The defendant continued to struggle and ultimately fell onto the first officer's ankle and broke it. *Id*. The defendant was convicted of aggravated battery. *Id.* On appeal, the court upheld the conviction because the defendant "knowingly scuffled" with the security officer and the security officer received great bodily harm as a result. *Id*. at 760.

¶ 22 Next, in *People v. Lattimore*, this court upheld the defendant's aggravated battery conviction where the defendant "struggled" with Family Dollar personnel as they attempted to detain him. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 45. The specific testimony supporting the conviction came from a security guard who testified that he grabbed the defendant by his sweater because the defendant was damaging the store's stock. *Id*. ¶ 14. The defendant then "yanked" away from the security officer and that "threw" the officer into a U-boat, which was described as a platform cart used to transport merchandise. *Id*. The security officer's shoulder struck the U-boat which caused "excruciating pain." *Id*. This court relied on *Rickman* in concluding that the defendant was practically certain that someone would be hurt during his repeated struggles with store personnel. *Id*. ¶ 63; see also *People v. Schmidt*, 392 Ill. App. 3d 689, 704-05 (2009) (concluding that the defendant was consciously aware that an officer was practically certain to suffer bodily harm where the defendant sped off in his vehicle and the defendant's side mirror struck the officer who had been standing next to the defendant's vehicle).

¶ 23 Defendant's conduct falls within that described in *Rickman* and *Lattimore*. Defendant engaged in multiple struggles with Officer Gomez, which resulted in two situations where Officer Gomez had to forcefully take defendant to the ground. After the first takedown, defendant immediately began "moving his body and arms." Defendant was initially under Officer Gomez, but he was able to "use his strength and overpower" Officer Gomez. Defendant turned Officer Gomez onto his back. Now on top, defendant was able to push Officer Gomez to the ground by using both of his hands to push Officer Gomez's chest. Defendant pushed Officer Gomez to such an extent that he was able to break free from Officer Gomez's hold. Defendant then fled again through the alley. Officer Gomez ultimately caught up to defendant and pinned him against a fence.

Based on these facts, there was sufficient evidence to establish that defendant was consciously aware that his conduct was practically certain to cause Officer Gomez bodily harm.

¶ 24    Defendant attempts to distinguish *Rickman* and *Lattimore* by arguing that, in those cases, there was a specific description of how the injuries occurred. In this case, in contrast, defendant argues that the record is silent as to what specific action of defendant caused Officer Gomez's injuries. Contrary to defendant's argument, it was sufficient that the State proved that the totality of defendant's conduct caused Officer Gomez's multiple abrasions. There is no requirement that the State pinpoint an exact moment when each abrasion occurred. And, based on the rapidly evolving situation and defendant's repeated struggles with Officer Gomez, it would be improbable that an exact moment could be pinpointed when an abrasion was sustained. However, based on Officer Gomez's testimony, each abrasion occurred during his physical struggles with defendant. Thus, defendant's argument that the injuries may have occurred at some other point during Officer Gomez's pursuit of defendant falls flat. See *People v. Cline*, 2022 IL 126383, ¶ 34 (explaining that "the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt"). In short, taking all favorable inferences in favor of the prosecution, the State presented sufficient evidence that defendant knowingly caused Officer Gomez's numerous abrasions.

¶ 25    Defendant also contends that Illinois Supreme Court and circuit court of Cook County pandemic-related orders tolling the Speedy Trial Act were invalid because they violated separation of powers principles. Defendant also argues that, even if the orders were valid, the continued delay of his trial was unjustified because other trials and hearings were being held and public policy no longer supported the delay. The State responds that the challenged orders were valid under the

Illinois Constitution. On defendant's second point, the State responds that defendant's disagreement with the courts over policy decisions does not negate the judiciary's power under the Illinois Constitution's separation of powers provision.

¶ 26    The statutory right to a speedy trial is found in 725 ILCS 5/103-5 (West 2020) (the Act). The Act as applied to individuals in custody provides: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2020). "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." *Id.* The Act as applied to individuals on bail provides: "Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant." 725 ILCS 5/103-5(b) (West 2020).

¶ 27    "Our standard of review for a statutory speedy-trial issue is twofold." *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 56. "First, absent an abuse of discretion, we will sustain the trial court's determination as to who is responsible for a delay in the trial." *Id.* "[S]econd, we review *de novo* the ultimate question of whether the defendant's statutory right was violated." *Id.* We are also asked to decide the constitutional validity of a supreme court order and our review of that issue is *de novo*. See *People v. Fuller*, 324 Ill. App. 3d 728, 731 (2001).

¶ 28    Defendant was arrested on October 5, 2019, several months before the pandemic began. An indictment was filed and the case was transferred to the criminal division to be heard on November 6, 2019. Multiple continuances were then entered by agreement from November 6, 2019, to April 24, 2020.

¶ 29    The pandemic began in December 2019 and had rapidly spread throughout the United States by March 2020. See *People v. Mayfield*, 2021 IL App (2d) 200603, ¶ 3. In response to the pandemic, individuals acted at all levels of government. In March 2020, Illinois Governor J.B. Pritzker declared every county in Illinois a disaster area and issued an executive order requiring all Illinois citizens to stay at home except to perform essential functions. Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-10.2020.html [https://perma.cc/P7CK-UBVT].

¶ 30    On March 13, 2020, effective March 17, 2020, Circuit Court of Cook County Chief Judge Timothy Evans ordered that all matters in the circuit court were "rescheduled and continued for a period of 30 days from the originally scheduled court date." Cir. Ct. Cook Cty. G.A.O. 2020-01 (eff. Mar. 17, 2020). A contemporaneous press release stated that no jury trials in criminal or civil matters would begin in the 30 days from March 17 to April 15. The order was "due to the spread of the coronavirus" and served to "protect the health and safety of the general public, the court's judges and employees, and elected officials."

¶ 31    On March 17, 2020, the Illinois Supreme Court entered an order in response to the pandemic. Ill. Sup. Ct., M.R. 30370 (eff. Mar. 17, 2020). On March 20, 2020, our supreme court issued another order, which authorized the chief judges of each circuit to continue trials for the next 60 days and until further order of the court. Ill. Sup. Ct., M.R. 30370 (eff. Mar. 20, 2020). Relevant to criminal proceedings the order provided that "any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 [citation]." *Id.*

¶ 32 On March 30, 2020, Chief Judge Evans amended the March 13 order to continue all court dates to the later of 30 days from the originally scheduled court date or not more than 30 days after May 18, 2020. Cir. Ct. Cook Cty. G.A.O. 2020-01 (eff. Mar 30, 2020). The amended order also, among other things, mandated remote work for most court personnel, directed the Cook County Sheriff to cease enforcement of eviction orders, limited the number of individuals who could be in a courtroom at one time, and mandated social distancing in line with Centers for Disease Control guidance. *Id*. The amended order also provided that "[a]ny delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of sections 103-5 (speedy trial), 109-3.1 (preliminary examination or hearing), and 113-6 (arraignment) of the Code of Criminal Procedure of 1963." *Id*.

¶ 33 On April 3, 2020, our supreme court amended the March 20, 2020, order to read:

> "The Chief Judges of each circuit may continue trials until further order of this Court. In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 [citation]. In the case of juvenile delinquency proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the juvenile for purposes of section 5-601 of the Illinois Juvenile Court Act [citation]." Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020).

On April 7, 2020, the order was again amended to add that the "continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). The order also added that the "[s]tatutory time restrictions in section 103-5 of the Code of Criminal Procedure of 1963 and section 5-601 of the Juvenile Court Act shall be tolled until further order of this Court." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 34    On May 20, 2020, our supreme court amended its initial order by adding the following language: "This provision also applies when a trial is delayed when the court determines proper distancing and facilities limitations prevent the trial from proceeding safely." Ill. S. Ct., M.R. 30370 (eff. May 20, 2020). The amended order required that the "judge in the case must find that such limitations necessitated the delay and shall make a record thereof." *Id.*

¶ 35    Through a series of subsequent orders, all jury trials in criminal cases were delayed in Cook County until March 22, 2021. Cir. Ct. Cook Cty. G.A.O. 2020-02 (eff. July 6, 2020, eff. Sep. 3, 2020, eff. Oct. 16, 2020); Cir. Ct. Cook Cty. G.A.O. 2020-07 (eff. Nov. 23, 2020, eff. Mar. 23, 2021). At that point, with COVID-19 protocols in place, the circuit court of Cook County started to hear one jury trial per week in criminal cases. Defendant's case was then set for May 10, 2021, and the trial began one day later on May 11, 2021.

¶ 36    On June 30, 2021, the Illinois Supreme Court amended M.R. 30370 to provide that the statutory time restrictions in section 103-5 of the Code of Criminal Procedure shall no longer be tolled beginning October 1, 2021. Ill. S. Ct., M.R. 30370 (eff. June 30, 2021). The order continued that "[a]ll days on and following October 1, 2021, shall be included in speedy trial calculations as contained in section 103-5 of the Code of Criminal Procedure of 1963." *Id.* The order also provided that "[d]ays prior to this Court's March 20, 2020, order *** shall also be included in speedy trial computations as required by the statutory time restrictions in section 103-5 of the Code of Criminal Procedure of 1963." *Id.*

¶ 37    If the orders from the Illinois Supreme Court and the circuit court of Cook County were valid, then the speedy trial term in this case only ran from October 5, 2019, to November 6, 2019, for a total of 32 days. Defendant agreed to continuances between November 6, 2019, and April 24,

2020. By April 24, 2020, defendant's speedy trial term was already tolled by the court orders described above. Defendant's speedy trial term was tolled beyond the point when defendant was tried on May 11, 2021. Thus, there was no speedy trial violation unless the courts overstepped their authority.

¶ 38 The focal point of defendant's challenge revolves around the concept of separation of powers. Our constitution provides that the "legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Article VI, section 1 of the constitution adds that the "judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Ill. Const. 1970, art. VI, § 1. Finally, section 16 of article VI provides that the "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. 1970, art. VI, § 16.

¶ 39 On these constitutional principles, our supreme court has stated:

> "The separation of powers provision does not seek to achieve a complete divorce between the branches of government; the purpose of the provision is to prevent the whole power of two or more branches from residing in the same hands. [Citation]. There are areas in which separate spheres of governmental authority overlap and certain functions are thereby shared. [Citation]. Where matters of judicial procedure are at issue, the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration. [Citation]. Ultimately, however, this court retains primary constitutional authority over court procedure. Consequently, the separation of powers principle is violated when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority." *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997).

¶ 40 The Illinois Supreme Court has not been reluctant to strike down statutory provisions when they both operate in the realm of the court's administrative authority and conflict with a rule

of the court. In *Kunkel v. Walton*, our supreme court found a statute directing "personal injury plaintiffs to deliver signed consents to the release of medical information" to be unconstitutional because it conflicted with a supreme court rule allowing trial courts to deny or limit discovery to prevent unreasonable annoyance and embarrassment. *Id*. at 531, 534. In *People v. Joseph*, our supreme court held that a statute that mandated a new trial judge hear a postconviction petition was unconstitutional because it conflicted with a supreme court rule providing that the chief judge of each circuit could enter general orders allowing for the assignment of judges. *People v. Joseph*, 113 Ill. 2d 36, 39-40, 46 (1986). In *People v. Jackson*, our supreme court struck down a statute granting each opposing counsel the right to conduct *voir dire* examination of each prospective juror because it violated a supreme court rule that directed the trial court to conduct the *voir dire* examination. *People v. Jackson*, 69 Ill. 2d 252, 255, 260 (1977). In *People v. Taylor*, our supreme court held that a provision of the Code of Criminal Procedure identifying which orders the State could appeal from was void because it conflicted with a supreme court rule. *People v. Taylor*, 50 Ill. 2d 136, 140 (1971).

¶ 41     These cases stand for the general proposition that "if a statute conflicts with a rule of [our supreme court] adopted pursuant to constitutional authority, the rule will prevail." *Joseph*, 113 Ill. 2d at 45. The Second District in *People v. Mayfield* analyzed the validity of the numerous court orders tolling the speedy trial act during the pandemic. *Mayfield*, 2021 IL App (2d) 200603, ¶ 21. The court held that the "scheduling of criminal trials is a matter of procedure within the realm of our supreme court's primary constitutional authority." *Id*. ¶ 21. The court continued that our supreme court "exercised that authority in this case in response to a pandemic that threatened the health and safety of millions of Illinois residents." *Id*.  Thus, "the supreme court had the authority

to allow the tolling of the time limits under the Act for bringing criminal defendants to trial." *Id.* The court concluded that the Illinois Supreme Court's exercise of its constitutional authority prevailed over the Act. *Id.* at ¶ 21.

¶ 42    We agree with the reasoning and holding of *Mayfield*, as have other districts of this court. See *People v. Jones*, 2022 IL App (4th) 200638-U, ¶ 41 ("We find the reasoning in *Mayfield* instructive and agree with its holding."); *People v. Weis*, 2022 IL App (5th) 210076-U, ¶ 84 (agreeing with *Mayfield* that the "general continuances made pursuant to the Illinois Supreme Court's administrative orders regarding the pandemic have the effect of tolling speedy trial computations"). Defendant cites several cases for the proposition that courts cannot read an exception into a statute that was not included by the legislature, see (*e.g.*, *Corbin v. Schroeder*, 2021 IL 127052, ¶ 44), but those cases are inapposite as they involve the interpretation of a statutory provision. Here, on the other hand, the issue is not one of statutory interpretation. Instead, the issue is which prevails between a statutory provision and an order of our supreme court pertaining to the administration of the court system. As illustrated fully above, when that issue has been presented to our supreme court, and where our supreme court's order involves the administrative authority of the courts, our supreme court has consistently held that the order prevails.

¶ 43    Defendant also argues that it was an abuse of discretion to treat his speedy trial term as suspended where, by the time his second motion to dismiss was denied in April 2021, public policy no longer reflected the view that a jury trial could not safely be held. Defendant points out that hearings and grand juries were being held while he awaited trial. Defendant also notes that he offered various alternatives to facilitate holding a trial earlier.

¶ 44 Defendant's argument on this point essentially makes the decision to conduct any matters in person an all-or-nothing proposition. In other words, defendant argues that because some hearings were being held, it was an abuse of discretion not to hold his trial. However, the courts, like legislatures often do, can "partially ameliorate a perceived evil" in a step-by-step process. See *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). On this record, we will not second guess Chief Judge Evans' decision to allow for some hearings to go forward while postponing others due to the pandemic.

¶ 45 In short, the Illinois Supreme Court and the circuit court of Cook County acted within their constitutional authority in tolling terms under the Speedy Trial Act because of the pandemic. The courts' orders acted to toll defendant's speedy trial term for much of the time during which defendant's case was pending. Thus, his statutory right to a speedy trial was not violated.

¶ 46                                      III. CONCLUSION

¶ 47 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 48 Affirmed.