2023 IL App (1st) 211606-U
Order filed: February 23, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1606

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 10950 |
| | ) | |
| WILLIAM CANO, | ) | Honorable |
| | ) | Michelle McDowell Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed defendant's conviction for aggravated criminal sexual abuse, finding that his right to a speedy trial was not violated and that there was no instructional error.

¶ 2    Defendant-appellant, William Cano, appeals his conviction of one count of aggravated criminal sexual abuse of his minor daughter, K.C. Defendant argues that his right to a speedy trial under section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2020)) (the Speedy Trial Act) was violated when his trial was postponed for more than 120 days pursuant to emergency orders issued by the Illinois Supreme Court and the chief judge of the circuit court

of Cook County in response to the COVID-19 pandemic. Defendant also contends that the circuit court made an instructional error by failing to adequately instruct the jury as to how it was to consider evidence of uncharged, other offenses testified to by K.C. We affirm.

¶ 3    In July 2018, defendant was indicted on four counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) for conduct occurring between March 8, 2011, and March 7, 2013. Count I alleged that, while defendant was 17 years of age or older and K.C. was under the age of 13, defendant knowingly committed an act of sexual penetration upon K.C. by making contact between his penis and her mouth. Count II alleged contact between defendant's penis and K.C.'s sex organ. Count III alleged contact between defendant's penis and K.C.'s anus. Count IV alleged contact between defendant's mouth and K.C.'s sex organ.

¶ 4    Defendant also was indicted on two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b), 5/11-1.60 (c)(1)(i) (West 2018)) for conduct occurring between March 8, 2011, and March 7, 2013. Count V alleged that when defendant was 17 years of age or older and his family member, K.C., was under the age of 18, he knowingly committed an act of sexual conduct upon K.C. by touching his penis to her hand for the purpose of his sexual arousal or gratification. Count VI alleged that the same conduct as charged in count V also occurred when K.C. was under the age of 13.

¶ 5    Defendant was held without bail and the matter was continued "motion State" (*i.e.*, with the delay attributed to the State) to August 14, 2018, the date of defendant's arraignment. Then the case was continued by agreement multiple times until August 12, 2019.

¶ 6    On August 12, 2019, the court heard the State's motion seeking to introduce proof of other crimes committed by defendant against K.C. and against K.C.'s sister for the limited purpose of showing defendant's intent, lack of innocent frame of mind, *modus operandi*, and propensity to

commit acts of sexual violence. The court granted the State's motion as to defendant's other crimes committed against K.C. and denied the motion with respect to defendant's other crimes against K.C.'s sister. Then defendant's case was continued by agreement multiple times to May 11, 2020, when the matter was set for jury trial.

¶ 7    Meanwhile, on March 9, 2020, Governor Pritzker declared every county in Illinois a disaster area in response to the COVID-19 pandemic. On March 13, 2020, Chief Judge Timothy Evans entered General Administrative Order (GAO) No. 2020-01 in response to the pandemic, continuing all matters in the circuit court of Cook County for 30 days. Cook Co. Cir. Ct. Adm. Order 2020-01 (Mar. 13, 2020).

¶ 8    On March 20, 2020, the Illinois Supreme Court entered an order authorizing the chief judges of each circuit to continue trials for the next 60 days until further order of the court. Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). The order also stated, "In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963."

¶ 9    On March 30, 2020, Chief Judge Evans amended his March 13 order to continue all court dates to the later of 30 days from the originally scheduled court date or not more than 30 days after May 18, 2020. Cook Co. Cir. Ct. Adm. Order 2020-01 (Mar. 30, 2020). The amended order also stated that with respect to criminal proceedings, "Any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section[] 103-5 (speedy trial)." *Id.*

¶ 10    On April 3, 2020, the supreme court amended its order of March 20, 2020, to provide that "The Chief Judges of each circuit may continue trials until further order of this Court." Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020). The amended order reiterated that, as to criminal cases, "any delay

resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963."

¶ 11    On April 7, 2020, the supreme court again amended its order to add that "[t]he continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial. Therefore, such continuances shall be excluded from speedy trial computations contained in section 103-5 of the Code of Criminal Procedure of 1963." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). The order further provided that "Statutory time restrictions in section 103-5 of the Code of Criminal Procedure of 1963 *** shall be tolled until further order of this Court." *Id.*

¶ 12    On April 29, 2020, defendant's case was before the circuit court on his motion to reduce bond. The court denied defendant's motion and the case was continued by agreement to June 15, 2020.

¶ 13    On May 1, 2020, Chief Judge Evans amended GAO No. 2020-01 to provide that "all matters in all Districts and Divisions of the court are rescheduled and continued for a period of 30 days from the currently scheduled court date or a date not more than 30 days after May 31, 2020, whichever is later." Cook Co. Cir. Ct. Adm. Order 2020-01 (Mar. 30, 2020). Any continuances would not be included in speedy trial computations. *Id.*

¶ 14    On May 20, 2020, the Illinois Supreme Court entered an order stating that, effective June 1, 2020, each circuit court could return to hearing court matters, whether in person or remotely, "according to a schedule to be adopted for each county by the chief judge in each circuit." Ill. S. Ct., M.R. 30370 (eff. Jun. 1, 2020). The supreme court also stated that it was amending its April 7, 2020, order to allow the chief judges of each circuit to continue trials "until further order of this Court." *Id.* Any such continuances would be "excluded from speedy trial computations." *Id.*

¶ 15    On May 28, 2020, Chief Judge Evans amended GAO No. 2020-01, continuing all matters for 30 days from the currently scheduled court date or not more than 30 days after July 6, 2020, whichever is later, and excluding all continuances from speedy trial calculations. Cook Co. Cir. Ct. Adm. Order 2020-01 (May 28, 2020).

¶ 16    On June 26, 2020, Chief Judge Evans entered GAO No. 2020-02, providing that effective July 6, 2020, the circuit court would begin hearing "all matters in all Districts and Divisions of the court with the exception of jury trials." Cook Co. Cir. Ct. Adm. Order 2020-02 (July 6, 2020). The order stated that any delay resulting therefrom would not be attributed to either the State or the defendant for purposes of section 103-5 of the Criminal Code. *Id.* GAO 2020-02 was further amended on August 21, 2020, September 3, 2020, September 21, 2020, and October 16, 2020, but all of the amendments still prohibited jury trials. See *id.* (eff. Aug. 21, 2020; Sept. 3, 2020; Sept. 21, 2020; Oct. 16, 2020).

¶ 17    On September 16, 2020, defendant's case was continued "order of court" to October 26, 2020. On that date, his case was continued order of court to December 14, 2020. The court asked, "There is no demand?" Defendant responded, "No demand to file."

¶ 18    On November 23, 2020, Chief Judge Evans entered GAO 2020-07, which stated that no criminal bench trials and no jury trials "of any kind" would be held until further order of the court and that any delays resulting therefrom would not be attributed to the State or the defendant for speedy trial purposes. Cook Co. Cir. Ct. Adm. Order 2020-07 (Nov. 23, 2020).

¶ 19    On January 26, 2021, defendant filed a written demand for a jury trial. The court held a hearing and informed defendant, who appeared via Zoom, that the chief judge had not yet authorized jury trials but that his case would be set for trial as soon as the court was authorized to do so. Defendant's case was continued, on the State's motion, to March 4, 2021.

¶ 20     On February 11, 2021, the Illinois Supreme Court amended its order of May 20, 2020. See Ill. S. Ct., M.R. 30370 (Feb. 11, 2021). This order provided that bench trials could be held remotely with a defendant's written consent as long as the trial court found that doing so would not "jeopardize the integrity of the trial process." However, the order continued to prohibit jury trials from being held remotely.

¶ 21     On March 23, 2021, Chief Judge Evans amended GAO 2020-07. See Cook Co. Cir. Ct. Adm. Order 2020-07 (eff. Mar. 23, 2021). The amended order set a "target date" of March 22, 2021, for the resumption of jury trials in criminal cases "beginning with a jury trial in the Leighton Criminal Courthouse on or about March 22." *Id.* The amended order further provided that the presiding judge of the criminal division may establish procedures for rescheduling cases. *Id.*

¶ 22     On May 3, 2021, defendant's case was continued motion State to June 7, 2021. On that day, defendant filed a motion to dismiss the charges against him because his right to a speedy trial had been violated as he had spent more than 120 days in custody without a trial. The Speedy Trial Act provides: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5 (West 2020).

¶ 23     Defendant's case was continued by agreement to July 12, 2021.

¶ 24     On June 30, 2021, the Illinois Supreme Court ordered, effective October 1, 2021, that the Speedy Trial Act would no longer be tolled due to COVID-19 and that the days prior to March 20, 2020, and the days on and following October 1, 2021, would be included in speedy trial computations. See Ill. S. Ct., M.R. 30370 (Jun. 30, 2021).

¶ 25     Defendant's case was continued, on the State's motion, to September 9, 2021. On that date, the circuit court heard arguments on defendant's motion to dismiss. The court denied the motion,

finding no speedy trial violation. The case proceeded to trial on September 14, 2021, on counts I through IV alleging predatory criminal sexual assault and count V alleging aggravated criminal sexual abuse for conduct occurring between March 8, 2011, and March 7, 2013.

¶ 26    K.C. was the State's first witness. Prior to trial, the circuit court had granted the State's motion allowing K.C. to testify to other sex crimes which defendant committed against her in Kankakee County prior to the dates of the offenses charged in the indictment, so as to show his intent, *modus operandi*, absence of innocent frame of mind, and propensity to commit crimes of sexual violence. Defendant asked the court not to instruct the jurors, prior to K.C.'s testimony, about the limited purpose of the evidence of the other crimes. Instead, defendant moved that the court wait until the close of trial to give the jury Illinois Pattern Jury Instructions, Criminal, No. 3.14 (IPI Criminal No. 3.14) (approved Oct. 17, 2014) explaining the limited purpose of the other-crimes evidence. The court granted defendant's motion.

¶ 27    K.C. testified that she was 20 years old at the time of trial. She made an in-court identification of defendant as her father.

¶ 28    K.C. testified first to the other sexual crimes that defendant allegedly committed against her in Kankakee County prior to the dates of the charged offenses. When she was four or five years old, she lived in a one-bedroom apartment with her parents in Manteno. After her sisters were born, her parents slept on a fold-out couch in the living room while the children slept in the bedroom. Defendant and her mother worked different shifts, and when her mother was at work, defendant was alone in the apartment with her.

¶ 29    When they were alone, defendant would bring her into the bedroom, close the door, lower his pants, and "have [her] touch his penis" with her hands until he had an orgasm. This happened

on more than one occasion. Sometimes he told her to touch his penis to her mouth until he had an orgasm. This also happened on more than one occasion.

¶ 30    When K.C. finished second grade, her parents separated and defendant went to live in Momence. K.C. and her mother and sisters went to live in Indiana. After her parents separated, K.C. visited defendant every weekend. During their visits, when they were alone together, defendant would require K.C. to touch his penis with her hands and mouth. He also touched his penis to her vagina and anus, although there was no penetration at first because she was "too small" and it was "too painful." Defendant told her not to tell anyone about these sex acts. K.C. complied because she was afraid that otherwise defendant would hit her with his belt.

¶ 31    K.C. then testified to the conduct alleged in the indictment. When K.C. was about eight years old, defendant bought a three-bedroom house in Richton Park in Cook County. When K.C. visited him, he would come into her bedroom and require her to touch his penis with her hands and mouth. Defendant also put his mouth on her vagina. They also engaged in vaginal and anal sex; she was old enough now that defendant was able to sexually penetrate her vagina and anus. K.C. stopped visiting defendant when she was about 11 years old.

¶ 32    When K.C. was 16 or 17, she had a conversation with her mother, who then took her to "this building where children go to talk about those sorts of events."

¶ 33    K.C.'s mother, Kristin Cotter, testified that she has three daughters, K.C., H.C., and M.C., who at the time of trial were, respectively, 20, 16, and 14 years of age. Defendant is the biological father of all three children. From 2005 to 2008, Kristin and her three daughters lived with defendant in an apartment in Manteno. K.C. was four when they first began living in the apartment in 2005, and she was about eight when defendant moved out in 2008. While they were all living together

in Manteno, Kristin worked at a tool works company on the 3 to 11 p.m. shift. While Kristin was at work, defendant stayed home to watch the children.

¶ 34    After defendant moved out, he went to live in Momence. K.C. and her sisters visited him there every other weekend. When K.C. was about 10 or 11, defendant moved to a three-bedroom home in Richton Park. K.C. and her sisters visited defendant every other weekend until November 2012, when defendant "didn't call to take them anymore."

¶ 35    In the Spring of 2018, K.C. had a conversation with Kristin, after which Kristin contacted Indiana Family Social Services. K.C. was interviewed by the police and underwent a forensic interview.

¶ 36    Corporal Brian Anderson of the Richton Police Department testified that in June 2018 he was assigned to investigate a criminal sexual assault perpetrated by defendant about eight years earlier. Anderson located defendant and took him into custody. On cross-examination, Anderson testified that they took a buccal swab from defendant. On redirect-examination, Anderson was asked whether K.C. had been referred to the hospital to be tested for sexual assault. Anderson said she had not been so referred due to the length of time since the alleged assault.

¶ 37    The circuit court admitted into evidence the certified birth certificate for K.C. showing her date of birth as March 8, 2001, and the certified birth certificate for defendant, showing his date of birth as January 1, 1980.

¶ 38    The jury convicted defendant of aggravated criminal sexual abuse and acquitted him of the four counts of predatory criminal sexual assault. The circuit court sentenced him to six years' imprisonment and required that he register as a sex offender. Defendant appeals.

¶ 39    First, defendant argues that the circuit court erred by denying his motion to dismiss the charges against him based on a speedy trial violation. Defendant contends that he was not brought

for trial until 265 days after his demand, well past the Speedy Trial Act's requirement that he be brought to trial within 120 days. The delay encompassed a time when administrative orders from the Illinois Supreme Court tolled the speedy trial calculations. Defendant argues that the orders violated the separation of powers doctrine under the Illinois Constitution.

¶ 40     Our standard of review for a statutory speedy trial issue is bifurcated: (1) we employ the abuse of discretion standard when reviewing the circuit court's determination as to who is responsible for a delay; and (2) we review *de novo* the ultimate question of whether defendant's statutory right was violated. *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 56. In the instant case, neither side is disputing who is responsible for the 265-day delay in holding defendant's trial; all parties agree that the delay was attributable to the administrative orders entered by the Illinois Supreme Court which tolled the statutory time restrictions in section 103-5 of the Criminal Code in the wake of the COVID-19 pandemic. The issue is whether these orders violated the separation of powers doctrine and should be given no legal effect, in which case defendant's right to a speedy trial was violated because his trial took place more than 120 days after he was taken into custody and the delay was not occasioned by him.

¶ 41     Section 1 of article II of the Illinois Constitution of 1970 states, "[t]he legislative, executive, and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Section 1 of article VI vests judicial power "in a Supreme Court, an Appellate Court and Circuit[] Courts." *Id.*, art. VI, § 1. Section 16 of article VI provides that "General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." *Id.*, § 16. "The judicial power has been described as including the adjudication and application of law and the procedural administration of the courts." *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997).

¶ 42    In *Kunkel*, our supreme court recognized that, although the branches of government are separate, their authority may overlap in certain functions. *Id.* at 528-29. The supreme court stated:

> "The separation of powers provision does not seek to achieve a complete divorce between the branches of government; the purpose of the provision is to prevent the whole power of two or more branches from residing in the same hands. [Citation.] There are areas in which separate spheres of governmental authority overlap and certain functions are thereby shared. [Citation.] Where matters of judicial procedure are at issue, the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration. [Citation.] Ultimately, however, this court retains primary constitutional authority over court procedure." *Id.*

¶ 43    The supreme court further held that its rules regulating court procedures supersede any inconsistent statutory provisions. *Id.* at 529.

¶ 44    In *People v. Mayfield*, 2021 IL App (2d) 200603, the second district appellate court relied on *Kunkel* in addressing the same issue as the one here, whether the supreme court's COVID-19 orders tolling the statutory time restrictions in section 103-5 of the Criminal Code violated the separation of powers doctrine. The *Mayfield* court stated:

> "The scheduling of criminal trials is a matter of procedure within the realm of our supreme court's primary constitutional authority. Pursuant to *Kunkel*, the court's exercise of that authority through its orders prevails over the [Speedy Trial] Act. Thus, the supreme court had the authority to allow the tolling of the time limits under the Act for bringing

criminal defendants to trial. The court exercised that authority in this case in response to a pandemic that threatened the health and safety of millions of Illinois residents." *Id.* ¶ 21.

¶ 45     We agree with the reasoning and holding in *Mayfield,* as have several other districts of this court. See *People v. Burton*, 2022 IL App (1st) 210913-U, ¶ 42; *People v. Jones*, 2022 IL App (4th) 200638-U, ¶ 41; *People v. Weis*, 2022 IL App (5th) 210076-U. To hold otherwise would be "to restrict the judiciary from exercising its primary authority over 'the procedural administration of the courts.'" *Jones*, 2022 IL App (4th) 200638-U, ¶ 41. [1]

¶ 46     Defendant argues, though, the supreme court lacked the power to read any exceptions into the Speedy Trial Act tolling its provisions due to the COVID-19 pandemic, and cites in support *Newlin v. People*, 221 Ill. 166 (1906). In *Newlin*, the defendant was not timely brought to trial due to the sickness of multiple trial judges. The supreme court reversed the defendant's conviction, finding that the sickness of a trial judge is not a stated exception to the Speedy Trial Act, and that the court was "without power to read into the statute in question an exception which does not appear there." *Id.* at 174.

¶ 47     The *Mayfield* court addressed *Newlin*, noting that the issue there, the illness of particular judges, was "in no way comparable to the pandemic that necessitated the entry of the supreme court's orders in this case." *Mayfield*, 2021 IL App (2d) 200603, ¶ 24. The *Mayfield* court also noted that *Newlin* was decided under the Illinois Constitution of 1870, which did not vest the supreme court with the general administrative and supervisory authority over all courts as does section 16 of article VI of our current state constitution. *Id.* ¶ 25. Further, "*Newlin*'s reasoning also

---

[1] Rule 23(e) states that "a nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes." Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

does not appear to reflect the current broad scope of the judicial power, particularly our supreme court's primary constitutional authority over court procedure, as illustrated in *Kunkel*. That authority encompasses the power to regulate the scheduling of trials, and when the supreme court exercises that authority, legislation in conflict must yield." *Id.*

¶ 48 We agree with *Mayfield* that *Newlin* is inapposite and that the supreme court had the power, as the primary constitutional authority over court procedure under section 16 of article VI of our state constitution, to toll speedy trial terms in response to the COVID-19 pandemic.

¶ 49 Next, defendant argues that his trial was delayed an additional 175 days after the resumption of jury trials in Cook County, and that this additional 175-day delay (which was not attributable to him) was an arbitrary exercise of judicial power inconsistent with the Illinois Supreme Court's COVID-related orders and deprived him of due process. See *Laboa v. Calderon*, 224 F. 3d 972, 979 (9th Cir. 2000) (holding that "A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement.").

¶ 50 Defendant essentially argues that Chief Judge Evans' order entered on March 23, 2021, which resumed jury trials in criminal cases on a limited basis, was a recognition that the worst of the COVID-19 pandemic was over and that jury trials could be held without jeopardizing health and safety. As such, defendant argues that after March 23, 2021, all criminal defendants were immediately entitled to jury trials without any further delays, and that those defendants who had exceeded or were approaching the speedy-trial period should have been prioritized. Instead, though, regardless of any speedy trial considerations, the circuit court routinely conducted jury trials for out-of-custody defendants before conducting trials for in-custody defendants (such as defendant here). As a result of the circuit court's prioritization of jury trials for defendants who

were not in custody, defendant's trial here was delayed 175 days, which was an arbitrary deprivation that deprived him of his right to due process.

¶ 51    Defendant's argument rests on the assumption that as of March 23, 2021, the spread of COVID-19 was a decreasing concern such that jury trials immediately should have resumed per the pre-COVID scheduling. However, the reality of the situation at that time was that the COVID-19 pandemic still was ongoing even if the rate of incidence was reduced, and the courts were tasked with the responsibility of determining how best to resume and schedule jury trials in such a way as to ensure the safety of all court personnel, litigants, and jurors. Chief Judge Evans's order of March 23, 2021, authorized the presiding judge of the criminal division to establish procedures for rescheduling cases; pursuant thereto, jury trials initially were resumed at the rate of one per week, beginning with trials for those defendants who were not in custody and thus were less likely to have the COVID-19 virus because they were not in prison where it was difficult to socially distance. We cannot say that the judges' health and safety concerns regarding a quick roll-out of jury trials for in-custody defendants was unfounded, or that the prioritization of jury trials for out-of-custody defendants was arbitrary and unreasonable under the circumstances as presented by the COVID-19 pandemic. Accordingly, we find that defendant's due process rights were not violated.

¶ 52    Nor was the 175-day delay in defendant's trial from March 23, 2021, through September 14, 2021, a violation of his speedy trial rights because during that time-period the statutory time restrictions set forth in the Speedy Trial Act were tolled by orders of the Illinois Supreme Court until October 1, 2021. As we have discussed, the supreme court orders were made pursuant to its authority under section 16 of article VI of the state constitution and were not a violation of the separation of powers doctrine.

¶ 53    Defendant argues that the State "could have proceeded with [his] case in a number of ways that would not have violated his speedy trial rights," for instance, it could have *nolle prossed* the charges against him and reindicted him on a later date, entered into plea negotiations, or refrained from objecting to the reduction in bond. Defendant's argument is based on the premise that his speedy trial rights were violated; however, as we have discussed, no such violation occurred here and accordingly we find no reversible error.

¶ 54    Next, defendant contends that the circuit court committed error when instructing the jury about his aggravated criminal sexual abuse charge, as the instructions failed to clarify the dates of the charged offense thereby allowing the jury to convict him for uncharged conduct. The function of jury instructions is to convey to the jury the correct principles of law applicable to the evidence so that the jury may arrive at a correct conclusion. *People v. Hudson*, 222 Ill. 2d 392, 399 (2006). Our task is to determine whether the instructions, considered as a whole, fully, and fairly stated the law applicable to the theories of the State and the defense. *People v. Pollock*, 202 Ill. 2d 189, 210 (2002). "The closing arguments of the parties are also instrumental in forming a jury's understanding of the law and can compensate for confusing aspects of the instructions." *People v. Olaska*, 2017 IL App (2d) 150567, ¶ 127.

¶ 55    The decision to give a certain instruction rests with the trial court and we will not disturb its decision absent an abuse of discretion. *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009). An instruction constitutes reversible error when it creates a serious risk that the jury incorrectly convicted defendant because it did not understand the applicable law. *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 63.

¶ 56    The alleged instructional error at issue here concerns how the jury was instructed about the charge of aggravated criminal sexual abuse. Defendant was charged with aggravated criminal

sexual abuse for conduct that occurred in Cook County between March 8, 2011, and March 7, 2013, specifically, for touching his penis to his daughter's, K.C.'s, hand for the purpose of his sexual arousal or gratification. K.C. testified that during those dates, when they were living in Cook County, defendant touched his penis to her hand until he had an orgasm. K.C. also testified that defendant committed the same type of aggravated criminal sexual abuse against her in Kankakee County prior to the dates of the charged offense.

¶ 57    Following all the evidence, the circuit court held a jury instruction conference. A discussion ensued regarding IPI Criminal No. 3.14, which explains the limited purpose of other crime evidence. Defendant asked that the court modify the instruction to indicate the specific dates of the crimes charged in the indictment in this case (March 8, 2011, through March 7, 2013), so as to assist the jury in distinguishing the charged conduct from the other-crimes evidence and prevent a conviction for the uncharged conduct. The court agreed and modified the instruction to read as follows:

> "Evidence has been received that the defendant has been involved in offenses other than those charged in the indictment (March 8, 2011, continuing through March 7, 2013).
>
> This evidence has been received on the issues of the defendant's intent, absence of innocent frame of mind, *modus operandi* and propensity to commit sexual assault and may be considered by you only for those limited purposes.
>
> It is for you to determine whether the defendant was involved in those offenses and, if so, what weight should be given to this evidence on the issue of the defendant's intent, absence of mistake and propensity to commit sexual assault."

¶ 58    Defendant also asked that IPI Criminal No. 11.62B, which explains the elements that the State must prove to sustain the charge of aggravated criminal sexual abuse, be modified to inform

the jury of the dates that he allegedly committed the crime as charged in the indictment so as to distinguish the charged conduct from the other-crimes evidence. The circuit court denied defendant's request because "[t]he dates of the alleged offenses has already been given to the jury" in modified IPI Criminal No. 3.14.

¶ 59    During its closing argument, the State referenced the other-crimes evidence in pertinent part as follows:

> "[T]he time period of the charges that you are to consider is the time period during which the victim was visiting with the defendant in Richton Park. That is Cook County. That is the jurisdiction that you are being charged with making the decision about. However, you heard about acts that started outside *** of Cook County, Kankakee, Momence, starting when she was five. And there is a reason why you get to hear that evidence and there is an instruction that tells you why you get to hear that other evidence.
>
> I'm going to read that to you. Evidence has been received that the defendant has been involved in offenses other than those charged in the indictment. Those are the out-of-county offenses. Those charged in the indictment occurred between March 8th of 2011 and March 7th of 2013."

¶ 60    The State then proceeded to inform the jury that the evidence of the out-of-county offenses could only be considered for the limited purpose of showing defendant's intent, absence of innocent frame of mind, *modus operandi*, and propensity to commit sexual assault.

¶ 61    Following the closing arguments, the circuit court read the instructions to the jury, including modified IPI Criminal No. 3.14 and IPI Criminal No. 11.62B.

¶ 62    We find no reversible error in the giving of the jury instructions. When considered as a whole, modified IPI Criminal No. 3.14 and IPI Criminal No. 11.62B, in conjunction with the

-17-

State's closing argument, accurately conveyed the applicable law, including the dates of the charged offense and the limited purpose of the other-crimes evidence. The instructions given to the jury did not create a serious risk that it improperly convicted defendant of the uncharged offenses in Kankakee County.

¶ 63    For all the foregoing reasons, we affirm the circuit court.

¶ 64    Affirmed.